[No. 3902.]

Nilan v. The People.

1. Homicide—Accidental Killing—Self-Defense.

In a prosecution for murder where the defendant was a boy fifteen years old and the deceased a much larger boy nineteen years old, and the evidence showed that deceased had twice assailed the defendant, jerking him off a shed and tearing his clothes, and the defendant had warned deceased to let him alone and had armed himself with a small baseball bat, and the defendant testified that at the time the fatal blow was struck the deceased came up behind him and used a vile epithet towards him, and believing he was about to be again attacked by deceased, he struck backward with the bat without any intention of killing or seriously injuring the deceased, but that he used the bat only to put himself on an equality with deceased and to prevent an assault and battery, and the evidence further showed that the blow was given quickly, and without any aim at any particular part of deceased's body, and was not a hard blow but falling upon deceased's head proved fatal, it was error for the court to refuse to submit to the jury the defense of excusable homicide by accidental killing. It was also error to instruct the jury as to the law of self-defense. The court on request should have submitted to the jury whether, under the evidence, the defendant was justified in believing that an assault and battery was about to be committed upon him, and whether he employed only necessary and reasonable means to prevent it, coupling therewith the law applicable to their findings.

2. Instructions—Malice—Presumptions.

Malice and an intention to kill may be inferred from the use by defendant of means that are calculated to produce death, but the inference is one of fact and not of law, and while it is proper for the

court to tell the jury that they are at liberty, from the employment of means likely to produce death, to presume that the defendant intended to kill, an instruction that tells them that the legal presumption is that death was intended is erroneous.

3. INSTRUCTIONS—APPROVED FORMS.

The practice of adding to, or changing the language of, well approved definitions and instructions is condemned. It is proper and sufficient for a jury to be instructed that if the killing was perpetrated with a deadly weapon, the provocation must be great to make the killing manslaughter, but an instruction that the provocation must be "great indeed," while it might not be sufficient to work a reversal, is disapproved.

4. HOMICIDE—INSTRUCTIONS.

In a prosecution for murder, an instruction to the effect that if the jury found that the defendant willfully and intentionally struck the blow that killed deceased, they should find him guilty, without specifying the grade of homicide, is erroneous. The instruction should require them to find malice, or restrict the finding of guilty, to manslaughter, and the fact that in another instruction they were told that malice is an essential element of murder of either degree does not cure the error.

5. INSTRUCTIONS—NOT RESPONSIVE TO EVIDENCE.

It is bad practice to give to the jury instructions on abstract propositions of law not called for by the evidence even though the instruction is harmless.

6. MURDER—INSUFFICIENCY OF EVIDENCE.

The evidence in this case held insufficient to constitute either degree of murder.

*Error to the District Court of Arapahoe County.*

Messrs. WARD & WARD, for plaintiff in error.

Mr. D. M. CAMPBELL, attorney general, Mr. CALVIN E. REED and Mr. DAN B. CAREY, for the people.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

The defendant was indicted for the murder of John Purcell, found guilty of murder of the second degree, and sentenced to a term of ten years in the penitentiary. The evidence is not voluminous, and the facts may thus be stated:

Mike Nilan, the defendant, a boy fifteen years of age, and John Purcell, the deceased, nineteen years of age, in company with some other boys and some girls of about the same age, were engaged in playing on a vacant block in the city of Denver. Nilan was a small boy for his age; the deceased was larger and stronger. The boys were playing at ball when Nilan climbed upon the roof of a shed, or top of a box, at the corner of an alley running through the vacant lot, and while sitting there Purcell threw a rope around his neck, pulling him off the shed and tearing his trousers. Upon a remonstrance being made by Nilan to this act, stating to Purcell that his trousers had been torn, the latter put his hand in the rent and made it larger. To this, it seems, Nilan made no resistance, but resumed his former position. Soon thereafter Purcell, who had, in the mean time, been playing at jumping the rope with some other boys and the girls, came back and "jerked" Nilan off a second time, when the latter said to him, "Look out, or you will get hit with a brick," to which Purcell responded that he would not hit anybody.

Purcell then passed along the sidewalk adjoining the lot and re-engaged in playing, and Nilan picked up, or was handed by one of his fellows, a small ball bat which the boys had been using in their play, and, holding it in his hand, leaned against the fence. No attempt was made by Nilan in any manner to follow Purcell, or to say anything to him. After a short interval, which the witnesses place all the way from three to fifteen minutes from the time when Nilan was the second time pulled off the shed, Purcell again came close to where Nilan was still leaning against the fence. Just what Purcell was doing is not very plain from the testimony, and none of the witnesses are certain about it, except that his face was turned towards Nilan, and he was stooping over—some say as though tying his shoe strings—and others not throwing any light upon his posture, or the reasons for it, except that the defendant Nilan, to whom Purcell seemed to have been nearer than to any of the others, states that

a vile epithet, not necessary here to repeat, was applied to him by Purcell, and that, believing Purcell, then behind him, was about to spring upon, or attack, him a third time, he struck him a backward blow with the bat which he held in his hand, without any intention whatever of killing him, or seriously injuring him, but that he used the bat only to place himself upon an equality with Purcell and prevent an assault and battery.

Nilan testifies, and such would seem to be the fair inference from the testimony of the other witnesses, that the blow was given quickly and without any aim at any particular part of Purcell's body, and all of the witnesses concur in the statement that the blow inflicted was not a hard one. Nilan ran after striking because, as he says, he was afraid he would be caught and chastised by Purcell.

Nilan himself testifies that he was angry and indignant at Purcell for having dragged him from the shed; but it seems that his anger had cooled down before the fatal blow was given. While some of the witnesses say that Nilan was angry, none of them testify, as we understand the record, that this state of mind continued down to the time of the blow, or give any facts showing, as the prosecution argues, that he was in a vindictive mood from brooding over the treatment received, or struck as the result of any such motive. Unfortunately, the blow fell upon the head of Purcell, resulting in his death.

The defendant admitted the killing, and his defense was that, in striking with the bat, he was doing a lawful act, viz, placing himself on an equality with Purcell so as to resist and prevent an assault and battery upon him, and that in so acting, but without any such intention, he unfortunately killed Purcell, and that the homicide was entirely accidental, or the result of misadventure, and, therefore, excusable.

The defendant asked the court to give what is numbered instruction No. 1, in which was outlined this defense. It is long, but, for the present purpose, is condensed into the foregoing statement:

VOL. XXVII—14

This instruction was refused, and in lieu of it the court gave the following:

" The defendant admits that he struck the deceased with a baseball bat at the time and place specified in the information, but claims that he acted in self-defense in the premises, and that the death of Purcell as a result was purely accidental. If you find from the evidence that these claims of defendant are true, or entertain a reasonable doubt whether they are true, then you should acquit him."

The court gave another instruction, numbered 19, as follows:

" You are further instructed, that if a person kill another in self-defense, it must appear that the danger was so urgent and pressing that in order to save his own life or to prevent his receiving great bodily harm, the killing was absolutely necessary. And it must appear that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given."

Several other instructions of the usual kind, upon the law of self-defense, were given.

It thus appears that the court misconceived the nature of the defense on which the defendant relied. It was not that he killed Purcell to save his own life, or to prevent great bodily harm, but that the killing was purely accidental, the result of a lawful act done by him. Possibly defendant's first instruction needed some qualification to make it good and, for that reason, the court may not have erred in refusing to give it. The court, on request, should have submitted to the jury whether, under the evidence, the defendant was justified in believing that an assault and battery was about to be committed upon him, and whether he employed only those necessary and reasonable means to prevent it which the law recognizes, coupling therewith the consequences flowing from their finding upon those issues in favor of, or against, the prisoner. But the prejudice to the defendant was not so much, or at all, in refusing to give this particular instruction,

as asked, but it consisted not only in failing to state the true character of the defense, but especially in submitting to the jury a defense that was not made, and in support of which there was not a particle of evidence.   There being no such defense made as that submitted,—consequently there being no evidence to sustain it,—the jury, if they obeyed the instructions, must necessarily find defendant guilty.   We go further and say, if defendant had asked instructions on the law of "self-defense," they should have been refused, because there was no evidence on which to predicate them.   But the question here is not whether the defense of excusable homicide was made out.   There was evidence in support of it, and the court should have instructed upon the law applicable to it.   *Crawford v. People*, 12 Colo. 290 ; *Boykin v. People*, 22 Colo. 496 ; *McBride v. People*, 5 Colo. App. 91–103.

Instruction No. 10, given by the court, was as follows:

" You are instructed that to constitute malice aforethought, it is only necessary that there be a formed design to kill ; and such design may be conceived at the moment the fatal stroke is given, as well as a long time before.   Malice aforethought means the intention to kill ; and where such means are used as are likely to produce death, *the legal presumption is that death was intended.*"

In this instruction the jury are plainly told that from the use by a defendant of means that are calculated to produce death, the *law* itself presumes that death was intended.   Malice, it is true, may be implied, but still malice is a presumption of fact, and while it would have been proper for the court to advise the jury that they were at liberty, from the employment of means likely to produce death, to presume that the defendant intended to kill, nevertheless it was for the jury, as a matter of fact, to draw this inference, and it was improper for the court to tell them that the presumption was one of law.   The attorney general ingeniously seeks to uphold this charge by saying that it is different from a statement that, from such means, the law presumes murder.   But in either case the instruction would be erroneous.   The jury may, from

certain facts, infer murder, or that the killing was intended, but the court should not tell the jury that the *law* draws the inference for them. *Kent v. People*, 8 Colo. 563, 578; *Smith v. People*, 142 Ill. 117; *Fitch v. State*, 37 Tex. Crim. Rep. 500; *Morgan v. State*, 16 Tex. App. 593, 598.

In the thirteenth instruction given by the court the jury were told that if the killing is perpetrated with a deadly weapon, the provocation must be great *indeed* to extenuate the offense to manslaughter. In *Ritchey v. People*, 23 Colo. 314, this court took occasion to condemn the practice by trial courts of adding to, or changing the language of, well approved definitions and instructions. In accordance with the precedents it was sufficient for the court merely to tell the jury that the provocation must be great, without adding " indeed," to make the crime manslaughter. This, of itself, might not be sufficient to work a reversal, but we take occasion again to call attention to this departure from the beaten path.

Instruction No. 17 was:

"If the jury believe from the evidence, beyond a reasonable doubt, that the defendant struck the deceased, and knocked him down, willfully and intentionally, and without legal excuse or justification, as the same is explained in these instructions, and the deceased died in consequence of such striking and knocking him down, then the jury should find the defendant guilty."

From this the jury might infer that the defendant could be found guilty of either of the four grades of homicide, though not actuated by any malice whatever. Malice, however, as is well known, is the distinguishing feature between murder and manslaughter. It is doubtless true that the court intended the instruction to apply to manslaughter only, and not to murder of either degree, unless the jury also found malice, as elsewhere defined. But, unfortunately, the instruction was not sufficiently guarded in this respect, and the intention was not clearly, but, to say the least, ambiguously, conveyed. It is not an answer to say that elsewhere the jury were told that malice is an essential element of either degree of murder.

We cannot guess that the jury selected the right, and rejected the erroneous, where two instructions, one correct, and the other incorrect, were given. *Kent v. People, supra;* Wharton's Crim. Law (10th ed.), 303; *Clare v. People,* 9 Colo. 122; *Ritchey v. People, supra.*

Instruction No. 22 states the law relating to the accountability for their acts of persons of different ages, and all that portion which applies to those under the age of fourteen years is wholly inapplicable to the facts of this case; and while it may be said that it was harmless error because the defendant was beyond the age of fourteen and is therefore presumed to have sufficient capacity to commit the crime of murder, still it is a bad practice to give such abstract propositions wholly uncalled for by the evidence.

We have not overlooked the argument that the evidence is not sufficient to sustain the verdict. Not possessing the advantages of a trial court in determining the credibility of witnesses who testify in open court, we would be inclined to refrain from comment on its sufficiency were there any serious conflict in the testimony. But there is not, and we are impressed with the inadequacy of the evidence to prove either degree of murder.

The judgment should be reversed and the cause remanded, and it is so ordered.

*Reversed and remanded.*