No. 16,046.

CARTER *v*. THE PEOPLE.
(204 P. [2d] 147)

Decided February 21, 1949. Rehearing denied March 21, 1949.

Mr. FRANK H. HALL, Mr. HUNTER D. HARDEMAN, Mr. JOSEPH F. NIGRO, for plaintiff in error.

Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. DUKE W. DUNBAR, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

IN this cause plaintiff in error, to whom we will hereinafter refer as the defendant, was charged in the district court of Las Animas county with the crime of first degree murder. He entered pleas of "not guilty" and "not guilty by reason of insanity." Upon the trial, the jury returned a verdict of guilty of murder of the first degree and fixed the penalty at life imprisonment.

Defendant assigns numerous alleged errors in the conduct of the trial, but seriously argues and relies upon the asserted error of the trial court in admitting evidence over his objection. The defendant called Dr. Lee J. Beuchat who qualified as an expert psychiatrist and who testified concering his examinations of the defendant on the day following the shooting and upon subsequent occasions. He further testified concerning defendant's background and case history, and explained the tests and standards he had applied in his examinations of defendant. Dr. Beuchat testified that in his opinion the defendant was insane at the time the shooting occurred; that he did not believe defendant was capable of distinguishing right from wrong, accepting the right and rejecting the wrong, at the time the shooting occurred. He testified that in his opinion defendant was sane at the time of the trial, but that he might be subject to similar manifesta-

tions, such as occurred at the time of the shooting, at any time in the future.

The defendant offered no evidence tending to dispute any material fact to which witnesses for the people testified, and his sole defense and upon which he relied was that of his mental condition at the time of the commission of the alleged crime. The people called Dr. Franklin G. Ebaugh and Dr. William Ewald Busse in rebuttal. Each of these doctors on direct examination qualified as an expert psychiatrist, and each in turn testified concerning the examinations, tests and standards that had been applied by them in the examination of defendant. Each testified that in his opinion the defendant was sane at the time of the shooting. On cross-examination of Dr. Ebaugh he stated that defendant was observed by himself, Dr. Lyons, Dr. Busse and by Dr. Symes.

On the cross-examination of Dr. Busse the following appears in the record: "Q. By the way, there were four different doctors that examined Mr. Carter, were there not? A. I am sure there were. Q. And all of them psychiatrists? A. Yes, sir. Q. Is that a common procedure in cases of this type? A. Yes, we usually do it that way. Q. Do you ever have occasion to differ among yourselves? A. Yes, we do. Q. In other words, you formulate one opinion, and Dr. Ebaugh might formulate one under certain circumstances, and possibly other doctors have different opinions too? A. That is right. Q. Just as in our Supreme Court sometimes we have dissenting opinions. A. That is right. Q. In an event of that kind, I presume you get together and talk things over and try to be helpful to each other and see if you can reconcile your differences, see if they are reconcilable? A. Perhaps. Q. Does that often occur, Doctor, or is it a rather rare occurrence? A. It doesn't happen too often. In fact, I can only remember one case on the 1927 law that there was some dispute about. Q. There are quite a number of very reputable and high grade psychiatrists in Denver, are there not, that are not connected

with the hospital? A. Certainly. Q. In private practice? A. Certainly. Q. And isn't it true that members of the hospital staff and these private psychiatrists often have different opinions on the same case? A. They do have differences of opinions. Q. Beg your pardon? A. There are some who have differences with our opinions. Q. And they are men whose ability and integrity you do not question at all? A. I certainly don't question their ability or their well meaning. Q. Do your question their integrity? A. No, sir."

On redirect examination by the District Attorney is the following: "Q. You were asked if sometimes the doctors on the staff up there disagreed. A. That is correct. Q. You said that occasionally they do, one time that you can recall. In this particular case I will ask you if it isn't a fact that all four of the doctors—

"Mr. Hall: Just a moment. To which we object. We don't know what the other two doctors found. I submit it would be hearsay. The witness is not entitled to testify to that.

"Mr. Mabry: I submit he can tell whether they agreed or not, Your Honor. Counsel has opened this matter.

"The Court: Yes, that is correct.

"Mr. Hall: If Your Honor please, it calls for hearsay testimony.

"The Court: We will see whether it does or not.

"Q. How do you know that? How do you ascertain whether you all agree? A. Written reports to Dr. Ebaugh. Q. Written reports. Have you seen the written reports of the other doctors? A. Have I seen the written reports? Q. Yes. A. Yes, I have.

"Mr. Hall: We have never received any written reports.

"The Court: He may answer the question.

"Mr. Hall: Note an exception.

"Q. Now, did all four of the doctors agree on this Carter case? A. They did."

Counsel for defendant moved to strike the testimony

of Dr. Busse, concerning the fact that four doctors had agreed that defendant was sane, which motion was denied by the court.

Defendant's counsel contend that the testimony of Dr. Busse, relating to the fact of agreement between all four of the doctors concerning the sanity of defendant, was hearsay evidence and that its admission violated the constitutional rights of the defendant, and particularly section 16, article 2, of the State Constitution, which provides among other things that in criminal prosecutions the accused shall have the right "to meet the witnesses against him face to face."

### Questions to be Determined.

First: *Under the circumstances here present, was the testimony of Dr. Busse, to the effect that two psychiatrists who were not called as witnesses agreed with him and Dr. Ebaugh concerning the sanity of the defendant, properly admitted upon the trial?*

■■ The testimony of Dr. Busse hereinabove quoted, to which defendant made objection, was clearly hearsay testimony and should have been excluded. The trial court in overruling defendant's motion to strike the testimony said, "You opened this very subject yourself as to whether they disagreed, and now you decline to permit the District Attorney to do the same thing."

The defendant's counsel made no inquiry at any time on cross-examination of the people's expert witnesses as to whether there was agreement or disagreement between the experts who had examined the defendant as to his mental condition. The court misconstrued the effect of the cross-examination in concluding that the defendant's attorney had "opened" the subject of agreement among the four psychiatrists concerning the mental condition of defendant. The evident purpose of the cross-examination of the experts by the defendant's attorney was, generally, to show that the science of psychiatry is not an exact science, that psychiatrists them-

sevles disagree upon occasions and that experts in the field, although fully qualified and equally conscientious, occasionally disagree. This line of cross-examination was proper. There was at the time of the cross-examination evidence of disagreement in the opinions of three such experts, each of whom had appeared before the jury and given their opinions. It was proper to draw from the people's experts the statement that disagreements of experts occasionally happen, as tending to show a possibility that the witnesses for the people might be mistaken, or that defendant's witness might be mistaken, without creating the kind of a conflict that would result in conflicting statements relating to a more exact science. The cross-examination of a witness must be confined to the scope of the examination in chief. In this case the cross-examination by defendant's attorney did not include within its scope the fact of agreement or disagreement among psychiatrists *as to the mental condition of the defendant.* The right of the District Attorney to redirect examination extended only to the scope of the cross-examination.

In the early case of *Sloan Saw Mill and Lumber Co. v. Guttshall,* 3 Colo. 8, our court stated: "The right to re-examine extends only to the same matter upon which he was cross-examined, and all questions which may be proper to draw forth an explanation of the sense and meaning of the expressions used by the witness on cross-examination, if they be doubtful, and also the motive by which the witness was induced to use those expressions, but counsel examining has no right to introduce new matter. 1 Greenl. Ev., § 467."

In the present case the "new matter" which the court permitted the District Attorney to introduce on redirect examination was the question as to whether doctors, other than those who testified, also "agreed" that the defendant was sane. The court erred in concluding that defendant had "opened" the subject of agreement on sanity in the particular case of the defendant. The

question by the District Attorney, "Now, did all four of the doctors agree on this Carter case?" was improper redirect examination. It was just as improper on redirect as it would have been improper on the examination of the witness in chief. Assuming, however, that the defendant had "opened" the door to the subject of agreement or disagreement among the four doctors, the facts with regard thereto could not be established by hearsay evidence. The trial judge himself asked the questions of the witness which without question showed the evidence to which objection was made to be hearsay. Those questions, and all that the record discloses concerning the facts upon which Dr. Busse based his assertion that the four doctors agreed in the case of this defendant, are quoted in the foregoing.

It was shown that the source of knowledge of the witness concerning the views of the doctors, who were not called to testify, was a written report made by them. From that report the witness concluded that the doctors who were not called agreed with him. The defendant had no opportunity whatever to cross-examine the authors of the reports. It cannot successfully be contended that the report itself would have been competent evidence. It would have been hearsay. The conclusions of Dr. Busse based upon an examination of a hearsay document is also hearsay. Neither could the other doctors state their conclusions to the witness in any manner which would avoid the application of the hearsay rule to such declarations. It is contended by the attorneys for the people that by the cross-examination of the doctors called as witnesses for the state, an inference was left in the minds of the jury that the two state psychiatrists, not called by the District Attorney, might have disagreed with the testimony of Dr. Ebaugh and Dr. Busse, and that to rebut that inference they had a right to show that the other doctors "agreed."

█ We agree that the District Attorney had the right to rebut or explain any adverse inference resulting from·

the cross-examination of witnesses called by him. However, competent and not hearsay, evidence must be offered to accomplish the destruction of such inferences as may be deemed adverse to the people's case. In *Stone v. Union Fire Ins. Co.*, 106 Colo. 522, 107 P. (2d) 241, in reversing the judgment because of the admission of hearsay evidence, we stated: "To a better understanding of the application of the hearsay rule to this testimony, a discussion of first principles will be helpful. Historically, the development of the rule is fully covered by section 1364, Wigmore on Evidence (3d ed.), vol. V, where it is defined as 'that rule which prohibits the use of a person's assertion, as equivalent to testimony to the fact asserted, unless the assertor is brought to testify in court on the stand, where he may be probed and cross-examined as to the grounds of his assertion and of his qualifications to make it.' "

Without question the testimony of Dr. Busse was offered to prove the truth of the alleged assertion of two doctors, not called as witnesses, to the effect that the defendant was sane. The statement of Dr. Busse that they "agreed" with him and Dr. Ebaugh could have no other effect. The admission of this testimony over the objection that it was hearsay was error.

Second: *Does the admission of the hearsay evidence amount to error sufficient to require reversal and a new trial of this cause?*

In effect, the admission of the hearsay evidence above discussed, added the voice of two additional doctors asserting that the defendant was sane. Prior to the admission of the questioned evidence one duly qualified expert had offered his opinion that the defendant was insane at the time of the commission of the alleged offense. Two experts disagreed and gave their opinions that defendant was sane. Upon the issue of insanity, if a reasonable doubt existed in the minds of the jury as to whether the defendant was, or was not, sane, he was entitled to a verdict of not guilty by reason of insanity.

We cannot say that the admission of the hearsay evidence, which in practical effect doubled the number of experts asserting that the defendant was sane, could not be the factor in removing what might otherwise have been a reasonable doubt in the minds of the jurors on the vital issue in the case. It is entirely possible that in the absence of this evidence the jury might have reached a different verdict.

The judgment is accordingly reversed and the cause remanded for a new trial.

MR. JUSTICE HAYS, MR. JUSTICE JACKSON and MR. JUSTICE ALTER dissent.

MR. JUSTICE HAYS dissenting.

For reasons which will hereinafter appear, I dissent from the majority opinion.

In this case four psychiatrists for the people examined the defendant, to wit: Doctors Ebaugh, Busse, Lyons and Symes. Only the first two of the doctors were called as witnesses in the case, and on the cross-examination of Dr. Busse, defendant's counsel asked: "Do you ever have occasion to differ among yourselves?" to which the witness answered: "Yes, we do." On redirect examination the witness was asked by the District Attorney: "Now, did all four of the doctors agree on this Carter case?" to which the witness replied: "They did."

In this court's opinion the above evidence was declared to be hearsay and the admission thereof reversible error. Assuming for the purpose hereof that such evidence is hearsay, I am convinced that it was harmless and that the admission did not constitute reversible error, and in no event is the defendant in a position to raise the question on review.

In volume 3, American Jurisprudence, page 580, section 1028, it is said that the admission in evidence of hearsay testimony, even though erroneous, is not prejudicial error where such evidence "had no bearing on the

issue involved or only a slight bearing"; or where "there is nothing to indicate that a new trial would result in a different verdict from that already reached"; or where "it was cumulative and related to a fact otherwise proved by competent evidence or to a fact not in dispute in the case."

In the instant case, the issue, and the only issue, involved, relates to the guilt or innocence of defendant. Whether or not the four doctors who appeared as witnesses for the people and who examined defendant agreed upon his mental condition, has only a slight, if any, bearing upon the real issue presented. Two doctors testified defendant was sane when the act was committed. The opinions of the absent doctors were cumulative and the sanity of defendant was otherwise fully established by other expert witnesses. In addition, there was no dispute between the people and defendant as to whether or not there was unanimity of opinion even among the doctors who appeared and testified at the trial as to the sanity of defendant. It is evident that psychiatrists disagree on that subject by the very fact that defendant's psychiatrist testified that in his opinion defendant was insane and the people's psychiatrists expressed opinions to the contrary. In any event, the testimony related to a collateral issue and not to the main issue, and under such circumstances, its admission did not violate the hearsay rule. It also is clear from an examination of the record that there is nothing to indicate, in the event of a new trial, that the result thereof would be different. In *Nance v. McClellan*, 126 Tex. 580, 89 S.W. (2d) 774, 106 A.L.R. 117, it is held that where hearsay testimony is merely a reiteration of other testimony and it is not reasonably probable that it influenced the jury, its admission in evidence is not reversible error.

It likewise is held in *State v. Gore*, 152 Kan. 511, 106 P. (2d) 704, 131 A.L.R. 1108, that error in the admission of expert testimony is not ground for reversal where

such testimony is merely cumulative and there is abundance of other competent evidence which sustains the opinion of the witness. See, also, *Fred Howland, Inc. v. Morris,* 143 Fla. 189, 196 So. 472, 128 A.L.R. 1013.

In connection with the above it is well also to consider that the alleged hearsay testimony herein related to opinion evidence of experts, and that the jury, even if said evidence was admissible, was not bound thereby under the instructions of the court, which contain, inter alia, the following: "The law allows those skilled in that special branch to express opinions on facts in evidence in this cause. But, nevertheless while their opinions are allowed to be given, it is entirely within the province of the jury to say what weight shall be given to them. Jurors are not bound by the testimony of experts, but their testimony is to be considered as that of any other witness; the mere fact that witnesses are called as experts and given opinions upon a particular point, does not necessarily obligate the jury to accept their opinions as to what the facts are in the face of the testimony of witnesses claiming to have actual knowledge of the facts."

Assuming therefore, that the evidence was hearsay and inadmissible, it is apparent there was no prejudice to the defendant by reason of the introduction thereof; that it related to a fact not in dispute and had but a slight, if any, bearing on the real issue of guilt of defendant; that such evidence was cumulative and related to a fact otherwise fully proven by competent evidence and also that under the instructions of the court, the jury was not bound by the testimony of experts.

The testimony to which objection was made was elicited by defendant's counsel on cross-examination of Dr. Busse, one of the psychiatrists called as a witness on behalf of the people, who said, among other things, that "even the best of men in this type of work make mistakes and improper diagnoses," that all psychiatrists can do "is express an opinion" as to whether or not the

defendant is sane or insane; that there are frequently vast differences of opinion not only between psychiatrists employed by the public, but also those in private endeavor; that "there are fields of medicine which are much more accurate than psychiatry"; that psychiatry is not an exact science; and that any one of the three psychiatrists who testified at the trial might be right or wrong in his opinion.

All of the above testimony was proper and related to a legitimate subject of inquiry. The jury had the right to weigh and consider such evidence and determine therefrom which opinion, if any, it wished to follow. The purpose of the above evidence was no doubt to emphasize the fact that there were irreconcilable differences of opinion as to the sanity of defendant as between defendant's doctor and those of the people.

Counsel for defendant, however, did not stop there. He then proceeded to create the inference that there was disagreement as between the people's psychiatrists, as shown by the following: "Q. By the way, there were four different doctors that examined Mr. Carter, were there not? A. I am sure there were. * * * Q. Do you ever have occasion to differ among yourselves? A. Yes, we do. Q. Does that often occur, doctor, or is it a rather rare occurrence? A. It doesn't happen too often. In fact, I can only remember one case on the 1927 law that there was some dispute about."

When the last above question was asked on cross-examination it was the obvious purpose of counsel for the defense to create the inference that the four psychiatrists of the people were in disagreement in the instant case as to defendant's sanity, and that this case might be the exception to which the witness referred when he said he remembered only one case where there was a dispute among the doctors. It is quite universally recognized that where such inferences are created on cross-examination by defendant's counsel, it is proper on redirect examination to offer evidence in rebuttal thereof,

as stated in 70 C.J., p. 702, §855, to wit: "On redirect examination a witness may properly be interrogated as to facts and circumstances tending to refute, weaken, or remove inferences, impressions, implications, or suggestions which might result from testimony or inquiries on cross-examination, although the facts brought out may be prejudicial to the other party. It has been held improper for the court to exclude such testimony."

It apparently is the view of the majority that the answer of the witness "They did [agree]" constitutes hearsay because, as indicated, the only way the witness could know whether or not the absent doctors agreed with the opinion of the witness as to defendant's sanity was to procure such information from the doctors themselves. Applying the same reasoning, the answer of the witness on cross-examination, to wit: "Yes, we do [disagree]," likewise would be hearsay. This court in the majority opinion takes the inconsistent position that hearsay evidence is admissible if elicited by the defendant on cross-examination, but inadmissible and prejudicial on redirect examination, and further that defendant's counsel on cross-examination of the people's witness may create inferences of disagreement among the people's doctors, and that the prosecution is powerless to rebut such inferences in kind. Such position, as I view it, is contrary to long-established pronouncements of this court.

In *Miller v. People,* 92 Colo. 481, 22 P. (2d) 626, where a similar situation was involved, in refusing to reverse the judgment we said: "Miller's theory was that the present prosecution was the result of a 'frameup,' or conspiracy, and in cross examining the sheriff, Miller's counsel was seeking, no doubt, to support that theory. As he was the first to go into the question of the sheriff's reasons for going to the pit on the night in question, the redirect examination by the district attorney [calling for other reasons] did not, in the circumstances, con-

stitute prejudicial error entitling Miller to a reversal of the judgment."

In *Boles v. People*, 37 Colo. 41, 86 Pac. 1030, Dr. Dabney testified that he had examined the defendant and that two fingers of his right hand "were in a contused condition * * * as if the fingers had been bitten." On cross-examination "he was interrogated as to whether he had inquired of the patient as to the cause of the injured condition of defendant's hand"; his answer was in the negative. On redirect examination the prosecutor asked why he had not made such inquiries, and this was assigned as error. In refusing to reverse the judgment, we said: "It was proper, on cross-examination, to ask the question that the defense did. It was equally proper, on re-direct examination, for the state to elicit the reason why the doctor had not made inquiry as to the cause of the wound under treatment." To the same effect, see, *Newton's Admrx. v. American Car Sprinkler Company*, 87 Vt. 546, 92 Atl. 831.

MR. JUSTICE JACKSON and MR. JUSTICE ALTER join in this opinion.