BANK OF HAWAII AND ROYAL INDEMNITY COM-
PANY *v.* Y. H. CHAR AND W. H. CROZIER, JR.,
INDIVIDUALLY AND AS COPARTNERS, DOING
BUSINESS UNDER THE FIRM NAME OF CHAR
& CROZIER, A REGISTERED COPARTNERSHIP,
DOROTHY H. CHAR, MARY K. CROZIER, JOHN
G. DUARTE AND ADELAIDE K. DUARTE.

NO. 2852.

ARGUED NOVEMBER 24, 1953.                DECIDED MARCH 3, 1954.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

This is a bill for foreclosure of mortgages, for appointment of a receiver to complete construction of a public road, for subrogation affecting mortgagee and surety under an indemnity agreement between them and the payment of creditors' claims against surety's indemnity bond to the Territory conditioned on the faithful performance of a road construction contract, for adjustment of rights, duties and liabilities between mortgagee, surety, mortgagors, principals and contractors and for other relief incidental thereto. It is brought by the petitioners, Bank of Hawaii, as mortgagee, and Royal Indemnity Company, as surety, against respondents Char and Crozier as mortgagors, principals and contractors and against their respective wives for whatever part they had therein, respondents Char and Crozier being sued as general partners and as individuals. On the filing of the bill, an *ex parte* order was entered appointing a receiver with the written consent of respondent Char as general partner for and on behalf of the respondent copartnership. After service the respondents Crozier and wife demurred. Their demurrer was overruled. They then answered. The petitioners filed a supplemental petition joining respondent Duarte and his wife as indemnitors of the contract to the petitioner-surety. The respondents Duarte and wife demurred. Their demurrer was overruled. They then answered. After a lengthy hearing, pursuant to an order to show cause, the temporary receiver was made permanent receiver and appointed *commissioner with authority to sell mortgaged* property. No useful purpose would be served at this juncture to recite the numerous mesne proceedings occurring during the more than three years of litigation or to detail the many defenses, objections, amended objections and final amended objections which the respondents interposed and made from time to time. Suffice it to say that ultimately there was entered a final decree after inquiries so

exhaustive and after hearings so extensive that no claim of any denial of due process of law could be reasonably made. Nor has such a claim in fact been made or suggested. The decree, thus entered, not only disposed of the respondents' defenses and objections but approved the receiver's accounts under attack, adjusted the rights, duties and liabilities of the parties with respect to each other. Pursuant to it four judgments were docketed. From the decree the respondents Crozier appeal.

The brief of respondents Crozier contains "Assignments of Error" which lists twenty-six alleged errors. Deeming this to be a substantial compliance with the rule requiring "a specification of the errors which are relied upon," the brief nevertheless does not "contain * * * a concise abstract or statement of the case presenting succinctly the facts, the questions involved and the manner in which they are raised" as required by appellate rule of court. (Sup. Ct. Rules, rule 3 (c), 38 Haw. 677.) In lieu thereof it sets forth facts covering ninety-six pages of brief without purporting in those pages to present what may be the questions involved. Nor are those questions succinctly presented elsewhere in the brief or in the reply brief of the respondents. Merely the character or substance of them is indicated from the final thirty-six pages of brief devoted to argument when the argument and its headings are read in the light of the pertinent errors listed in the assignments. This is not a compliance with the evident purpose of rule 3 (c), *supra*. Nor is the need for compliance lessened by the record which consists not only of a vast array of pleadings and exhibits but of over two thousand pages of transcript. On the contrary, the very voluminous character of that record aggravates the violation. At the same time it illustrates the need for the rule as a matter of fairness to the court and the opposite parties as well as to the respondents themselves in presenting

their case for appellate review. Nevertheless, this court is disposed in the interests of justice to waive the brief's deficiency to state questions for appellate decision and will review the case in so far as its presentation reasonably permits.

The twenty-six alleged errors as argued in the brief fall logically into three groups. From the first group are discernible questions challenging the *ex parte* appointment of a temporary receiver. From the second are discernible questions challenging the approval and allowance of accounts. The third states the existence of alleged errors in the entry of judgments, as entered pursuant to the final decree, and in the character, number and amounts of those judgments.

Questions challenging the *ex parte* appointment of a temporary receiver are in substance alleged defenses and objections to that appointment. They are to the effect that the consenting respondent-partner had no authority to bind the other respondent-partner to such appointment, that the petitioners at the inception of the suit when they obtained the order of appointment already had possession and control of all the assets and business over which they were seeking receivership, that by not alleging their possession and control thereof in their bill they came into court with unclean hands and that by reason of that possession and control they had no grounds for equitable relief. Any efficacy which those particular defenses and objections may have, however, depends upon whether the petitioners in fact had such possession and control. But that question was not put into issue below. Neither were such defenses and objections asserted nor relied upon in the trial court even though the respondents interposed and made many other defenses and objections by way of demurrer, answer and similar pleadings on which numerous and extensive hearings were held. Nor were they as

questions raised or urged before the chancellor. Upon that state of the record, the appellees invoke the rule against appellate consideration of questions raised for the first time on appeal.

The general rule that "an appellate court will consider only such questions as were raised and properly preserved in the lower court" was recently enunciated by this court and affirmed by the United States Court of Appeals for the Ninth Circuit. (*Re Guardianship of H. K. Ward,* 39 Haw. 39, 46; *Ward* v. *Booth,* 198 F. [2d] 963.) That rule with certain limitations not here pertinent accords with the accepted practice of all appellate courts. It rests upon considerations of practical necessity in the orderly administration of the law and upon considerations of fairness to the court and the opposite party as well as upon principles underlying the doctrines of waiver and estoppel, all of which by the way are comparable to the reasons for rule 3(c), *supra.* They are peculiarly applicable to questions determinable before the cause is tried on its merits. Of such character are the instant questions. They pertain to an order for a temporary receiver which was served on the appellants at the inception of the suit as the initial step in what proved to be a lengthy and protracted piece of litigation. Had those questions been raised below at the first opportunity when the respondents were ordered to show cause why the temporary receiver should not be appointed permanent receiver, they might have been met by the opposite parties by way of amendment or of additional proof so as to obviate or correct in the trial court errors of appointment with respect to the temporary receiver; otherwise at a later stage in the litigation they might have been correctly declared moot by the chancellor or such errors demonstrated to have been effectively cured by the evidence then adduced. Obviously, the rule applies. No useful purpose, therefore, would be served by any fur-

ther attempt to state such questions. Suffice it to say that they pertain to no manifest or fundamental error or to any other limitation of the rule warranting exercise of this court's appellate power of review with respect to them.

Questions challenging the approval and allowance of final accounts and discharge of the receiver are grounded upon an alleged error of trial and upon alleged errors of findings in the chancellor's written decision and final decree.

The alleged error of trial relates to the sustaining of an objection to a question propounded to the respondent Crozier on redirect examination. The question called for the contents of a chart showing operation costs of road construction when under supervision of the witness before that construction came under the receiver's supervision. The chart had been indirectly referred to on cross examination when the witness was asked what he had found out from his figuring of "operation costs when the job was under your own supervision," to which he replied, "Plenty." But he was not asked on cross examination to state those costs or to produce the chart and he did not testify as to them or as to the chart's contents. On redirect examination, however, the following question, as the particular one under consideration, was asked: "And in a general way what does that chart show?", the purpose admittedly being to prove the contents of the chart showing costs of construction incurred prior to the appointment of a receiver. The petitioners and receiver objected to it "as outside the scope of the cross examination and not proper redirect examination [and] on the ground of immateriality." Their objection was sustained. This court is of the opinion that it was properly sustained on the ground that the question, if not immaterial, was clearly beyond the scope of the cross examination and therefore improper on redirect examination. (See *State* v. *Chodos*,

147 Minn. 420, 180 N. W. 536; *Carter* v. *People,* 119 Colo. 342, 204 P. [2d] 147; 70 C. J. 708, § 858.) Furthermore, the question by its very purpose was calculated to open up an entirely new field of inquiry into comparative costs, which to be of any probative value would have necessitated delving into a host of collateral issues arising from differences between the various conditions and circumstances under which the witness supervised the construction of the first part of the road until he defaulted and those under which the receiver thereafter took over and supervised that of the remaining parts until completion. It therefore would have been within the exercise of judicial discretion for the chancellor *sua sponte* to have denied such extension of trial into collateral issues had none of the parties objected. (See 2 Wigmore on Evidence, 3d ed., §§ 443, 444, pp. 427-431.)

The alleged errors of findings in decision and decree are parenthetically designated by certain numbers from the "Assignments of Error" and in that manner made a part of four headings of argument. For instance, the first heading in this group reads: "The Burden was Upon the Receiver to Justify his Account. (Assignments of Error Nos. 9, 10, 13, 17, 18.)" The second reads: "The Receiver Failed in his Duty to Conserve the Assets, was Guilty of Negligence and Should be Surcharged. (Assignments of Error Nos. 10, 11, 13, 18.)" The third reads: "The Receiver is not Entitled to Compensation. (Assignment of Error No. 21.)" The fourth reads: "The Costs and Expenses of the Receiver and of the Case Generally Should be Assessed against the Petitioners. (Assignments of Error Nos. 22, 21, 15.)"

From a reading of these four headings, topics or theses, they appear to be in nature mere assertive conclusions impliedly drawn from assignments of error as numbered therein. In the nine pages of brief devoted to arguing and

expounding upon them, however, the alleged or assigned errors under consideration are not set forth. Nor do those errors as stated in the assignment of them purport to support the conclusions to be drawn from the headings of which they are made a part. No useful purpose, therefore, would be served to encumber this opinion with those assignments. Suffice it to say that they essentially allege that the chancellor erred in making and failing to make various holdings and findings, the gravamen being that he denied rather than sustained a charge of negligent administration against the receiver. A brief history of the charge is, therefore, in order.

The charge of negligence was originally made by eleven written objections. It was repeated by twelve written amended objections to which the petitioners and receiver demurred. Their demurrer was sustained to the extent that eight of those objections were declared to be "indefinite and uncertain." It was ultimately made by eight final amended objections covering eight pages of pleading and comparable in length to the argument which resembles them. The hearings with respect to all those objections and to related matters consumed fourteen days of trial at which fourteen witnesses testified and during which forty-four exhibits were introduced into evidence, the oral evidence and argument being recorded in nine hundred and eighty pages of transcript. On the close of those hearings, the chancellor took the case under advisement and finally overruled all the objections by a written decision covering seventeen pages. In that decision he evaluates the testimony of the witnesses and weighs their oral evidence, considers each objection in detail, demonstrates that the objections are all untenable and not supported by the evidence and finds that there is no basis for surcharge in the evidence and no proof of negligence resulting in loss to the receivership as charged. Following the entry of

such decision the trial judge entered the final decree wherein he affirmatively finds *inter alia* that "the receiver and commissioner herein has duly performed all the duties and obligations devolving upon him by law * * * and that [his accounts] are full, true and correct and should be approved, allowed and settled as filed." These are the findings in denial of the charge of negligence which the respondents make subjects of alleged error so as in effect to call upon this court to make contrary findings of its own sustaining that charge.

In considering that call, this court while aware of its power to answer it is cognizant that the chancellor as the trier of fact was in a better position to pass upon the credibility of the numerous witnesses and to weigh their oral evidence than is this court on appellate review. He presumably observed the demeanor of the witnesses and resolved the conflicts arising in varying degrees from their testimony. His findings of fact, therefore, are entitled to great weight and should not be overthrown unless the record is clearly convincing that they are not in accord with the evidence. Upon examination of the record this court finds no reason for disturbing them. On the contrary, it finds good reason from an abundance of substantial evidence to sustain them. The alleged errors of findings are, therefore, without merit.

The final alleged errors to be considered are three assignments of error referred to by number in the following heading of argument: "There was Error in the Entry of Separate and Duplicating Judgments and in Giving no Credit to the Respondents Crozier for the Payments made on Account by Duarte to Royal Indemnity Company. (Assignments of Error Nos. 20, 24, 16.)" Those numbered assignments in orderly sequence state that error exists (1) "in the docketing of four several judgments"; (2) "in segregating the amounts * * * found due to the Royal In-

demnity Company under the agreement of indemnity by the several indemnitors, and particularly in the docketing of two judgments for overlapping amounts with the result that the same sums upon execution might be required to be paid twice, and the rights of contribution between the indemnitors destroyed"; and (3) "in failing to credit upon any indebtedness of the respondents other than Duarte the sum directed to be paid to the Surety by reason of the application of the amount received. on the sale of equipment on which Duarte held a prior mortgage."

The first alleged error in that statement, so headed, is not argued in the briefs of the respondents and therefore is deemed to be abandoned. The remaining two alleged errors therein fit more appropriately the descriptive heading under which two pages of brief are devoted to argument upon them. They pertain to the two particular judgments which are in favor of the petitioner-surety, the other two being in favor of the petitioner-bank. One of such alleged errors runs to the segregation of amounts as overlapping ones in the two judgments. It assumes that those amounts were found to be due under an agreement of indemnity; that such an agreement exists by virtue of which the respondents Crozier and respondent Duarte are all indemnitors to the petitioner-surety and under which the liability of one indemnitor would equal that of another; that the overlapping amounts of the judgments against them are in fact for the same debt and that, if so, the final decree would permit that debt to be collected twice. The other alleged error runs to the same comparative amounts in the two judgments and rests upon the same assumptions. It further assumes that the difference in those amounts is due to a failure to give the respondents Crozier a credit to which they are entitled and which presumably had been given to the respondent Duarte; that such credit was. received on the sale of equipment which presumably

was realized from foreclosure of respondent Duarte's prior mortgage. But these assumptions give rise to questions of fact which to be determinable require that a review of the entire record and an interpretation of several indemnity agreements be made in the light of the written decision and final decree fixing liabilities and authorizing the judgments as to amounts and parties. Nor are those basic questions made the subjects of argument or otherwise attempted to be presented for appellate decision by the respondents. Moreover, even were such questions properly presented on appeal, the respondents would be in no position to urge this court to consider them under the particular facts and circumstances surrounding the entry of the final decree and concerning its nature and effect.

The decree *inter alia* specifically adjudges the amounts of indebtedness owed by various respondents to one or the other petitioner with respect to which it orders that judgments be docketed. That determination is a part of fourteen interrelated decretal orders and directives concerning matters affecting all the parties inclusive of the receiver, and underlying those orders and directives are findings of fact and conclusions of law covering eight pages of the fifteen-page decree. The decree as a whole is comprehensive in nature and in essence adjusts the rights, duties, and liabilities between petitioners and respondents and between combinations of those parties arising from their various relationships to each other which existed until settled and determined by the written decision. It was prepared by counsel to conform with that decision. It was ultimately "approved as to form" by the attorneys for all the parties. With that approval written on its face it was formally presented for entry to the chancellor together with the judgments for docketing. On presentation of those documents he, in the presence of the respondents Crozier, "announced that the form of Decree has been ap-

proved by Attorneys [for all the parties] and that the Court was entering up [the] Decree" which it thereupon did and the clerk of court accordingly docketed the judgments. The respondents Crozier, however, remained silent until for the first time on appeal they question the number and character of those judgments, so presented, authorized and docketed, as well as the comparative amounts in two of them. Patently, those respondents waived the right to do so as to matters of form. Nor will they be heard to do so on appeal as to matters of substance where as here questions of that character going to the essence of the final decree in authorizing the judgments were not raised and preserved below.

Decree affirmed.

*O. P. Soares* (*M. K. Ashford* with him on the brief) for respondents-appellants W. H. Crozier, Jr., and Mary K. Crozier.

*J. R. Cades* (*Smith, Wild, Beebe & Cades* with him on the brief) for petitioner-appellee Royal Indemnity Co.

*H. B. Kidwell* (*Anderson, Wrenn & Jenks* with him on the brief) for petitioner-appellee Bank of Hawaii.