## No. 26353

### The People of the State of Colorado v. Ronald LeRoy Schuemann

(548 P.2d 911)

Decided April 19, 1976. Rehearing denied May 10, 1976.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, David A. Sorenson, Assistant, Janet Lee Miller, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Dorian E. Welch, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

The defendant, Ronald LeRoy Schuemann, was charged with and convicted of first-degree murder, 1971 Perm. Supp., C.R.S. 1963, 40-3-102,[1] and conspiracy to commit murder, 1971 Perm. Supp., C.R.S. 1963, 40-2-201.[2] He was sentenced to the penitentiary for a term of forty years to life. Numerous errors are alleged as a basis for a new trial. Our review of the record satisfies us that reversible error occurred which requires us to direct that a new trial be granted.

The defendant contends that he was unfairly restricted in the presentation of evidence and was denied the right to offer the testimony of a key

---

[1] Now section 18-3-102, C.R.S. 1973.
[2] Now section 18-2-201, C.R.S. 1973.

witness. We agree and, therefore, reverse and remand for a new trial.

In the early morning hours of May 8, 1973, the Arapahoe County sheriff's department commenced an investigation of the shooting death of John Plum. Plum was shot while he was in his pickup truck, and he was found dead behind the steering wheel. An investigation led to the arrest of the defendant, Ronald LeRoy Schuemann.

The prosecution established that John Plum was executed pursuant to contract. The evidence before the jury was that Robert Byers was carrying on an affair with Charlotte Plum, John Plum's wife, and wanted the husband killed. The trial established that Byers contracted with the defendant to have John Plum killed and paid $500 down on the contract price. Byers pled quilty to being an accessory and testified against the defendant.

The defendant took the stand in his own defense and told a story that placed responsibility for the murder on Byers. He testified that Byers told him he had a "package" that he wanted picked up and taken somewhere and that the job was dangerous and would pay quite well. According to Scheumann, on the night of the murder, he met Byers outside Plum's apartment house and, at the same time, discovered John Plum's body behind the steering wheel of his truck. Byers, according to Scheumann, pointed a rifle at him and told him that this was his package and that he was to dispose of it in a place where it would not be found for a while.

Byers was last seen by his roommate around 10:30 p.m. on the night in question, and his roommate testified that Byers conceivably could have left the apartment without his knowledge. Lastly, when Byers was in custody, he admitted killing Plum. The jury was called upon to determine whether Plum met his death at the hands of the defendant or Byers. The evidence presented at trial was sufficient to support a conclusion by the jury that the defendant shot Plum. On the other hand, the defendant's testimony that Byers shot Plum was entitled to be evaluated by a jury that was aware of Byers' mental condition. At the trial, Byers' credibility became significantly important when he denied shooting Plum.

Certainly, the defendant's credibility was down-graded because of his numerous and inconsistent versions of the events which culminated in the murder of Plum. Scheumann had psychiatric and drug problems which further diminished his credibility. Byers, however, suffered from psychiatric problems which may have affected his credibility. Defense counsel should have been permitted to present evidence to the jury relating to Byers' mental condition. The evidence indicated that Byers, not the defendant, created and was the moving force behind the plot to murder John Plum.

## I.
### Limitations on Cross-Examination

Defense counsel was limited by the court in his cross-examination of Byers as to Byers' mental condition. The record clearly establishes that

Byers not only had a history of psychiatric problems, but also, according to one psychiatrist, was a delusional paranoid schizophrenic. One psychiatric report in the record declared that Byers was insane. Initially, an *in camera* hearing was held to determine whether Byers was competent to testify. The court ruled that Byers was competent to testify and further stated that "any questions that might be raised go to the weight to be given to [his] testimony . . . ."

When the jury was recalled, Byers was cross-examined by defense counsel on his original, but withdrawn, plea of insanity. He was asked whether he had originally pled not guilty by reason of insanity and whether he had been examined by a doctor in Pueblo. The prosecution objected to this line of questioning, and the objection was sustained. Thereafter, another *in camera* hearing was held outside of the presence of the jury, and defense counsel, at this hearing, stated that he intended to ask Byers whether a doctor in Pueblo had found him to be legally insane. Alternatively, he declared that he intended to ask Byers whether he knew that a doctor in Pueblo had found him to be legally insane. Both questions were held to be improper by the trial judge. In our view, the trial judge made the correct evidentiary ruling.

Mental incapacity of a witness is clearly admissible for the purpose of impeachment, since it bears directly upon the question of credibility. *Johnson v. People,* 171 Colo. 505, 468 P.2d 745 (1970); *Blanchard v. People,* 70 Colo. 555, 203 P. 662 (1922). Here, however, defense counsel propounded questions which were purposely designed to elicit a double hearsay expert opinion, and such questions are improper. *Bauman v. People,* 130 Colo. 248, 274 P.2d 591 (1954); *Carter v. People,* 119 Colo. 342, 204 P.2d 147 (1949); *Pomeroy v. People,* 116 Colo. 518, 182 P.2d 139 (1947); *see also People v. McCormick,* 181 Colo. 162, 508 P.2d 1270 (1973).

The limitation of cross-examination, in the absence of a showing of abuse or manifest prejudice, does not constitute reversible error. *People v. Cushon,* 189 Colo. 230, 539 P.2d 1246 (1975); *McCune v. People,* 179 Colo. 262, 499 P.2d 1184 (1972); *Simms v. People,* 174 Colo. 85, 482 P.2d 974 (1971).

## II.
### Restriction of Proof

When the court prohibited defense counsel from obtaining testimony from Byers as to his knowledge of the examining psychiatrist's opinion, an offer of proof was made. Defense counsel offered to present the testimony of the examining psychiatrist regarding Byers' mental condition. The trial court refused to permit the psychiatrist to testify. The prosecution attempts to justify the trial court's ruling by suggesting that the evidence was improper because the offer of proof was not complete and because the psychiatrist's testimony was in conflict with the testimony of another psychiatrist.

The prosecution urges that the difference in psychiatric opinion could only confuse and distract the jury. Opinions of psychiatrists on mental disabilities often are the subject of gradations that defy precise definition and evaluation. Defense counsel's offer of proof was that a psychiatrist would testify that Byers was a delusional paranoid schizophrenic. The only fair inference to be drawn from the offer of proof was that testimony would be presented establishing that a delusional paranoid schizophrenic was not an entirely credible witness. Defense counsel's effort to present the testimony was obviously for the purpose of attacking the credibility of the prosecution's key witness. The trial court even acknowledged that Byers' previous psychiatric history would go to the weight to be accorded to his testimony. The psychiatric issue was not collateral. The differences in the opinions of the psychiatrists should not have foreclosed the admissibility of the opinion of an otherwise qualified psychiatrist. *See generally, People v. King*, 179 Colo. 94, 498 P.2d 1142 (1972). The offer of proof was sufficient, and the trial court erred in not permitting defense counsel to call the examining psychiatrist for the purpose of establishing the mental condition of Byers.

In a case that largely depended upon whether the jury would believe the testimony of the defendant or the testimony of Byers, it was essential that wide latitude be granted to the defense on cross-examination concerning the mental condition of Byers. Therefore, fundamental fairness requires that we reverse the judgment and remand for a new trial consonant with the directions set forth in this opinion.

Judgment reversed and cause remanded for a new trial.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE DAY do not participate.