[No. 4797.]

ZIPPERIAN v. THE PEOPLE.

1. **Appellate Practice—Abstract of Record—Continuance.**

An assignment of error based on the ruling of the court upon an application for continuance may be disregarded, if the application and affidavits in support thereof are not set forth in the abstract of record.

2. **Evidence—Dying Declarations.**

On a prosecution for homicide the dying declarations of the deceased as to the circumstances of the killing, if made in extremis with a belief entertained by him that his death is imminent and that there is no hope for his recovery, are admissible in evidence, though defendant was not present at the time they were made and had no opportunity for cross-examination.

3. **Same.**

In order that a dying declaration shall be admissible in evidence it is not necessary that deceased should have stated, at the time, that it was made under a sense of impending death, if it satisfactorily appears, in any mode, that they were made under that sanction.

4. **Same—Written and Oral.**

Both written and oral dying declarations are admissib'e in evidence, and the fact that a written declaration was admitted

in evidence would not preclude the admission of oral declarations made at other times.

**5. Evidence—Homicide—Motive.**

In a prosecution for homicide the fact that deceased had caused an information for burglary to be filed against defendant, which was pending at the time of the killing, was admissible as tending to show motive for the killing.

**6. Homicide—Evidence—Dying Declarations—Instructions.**

In a prosecution for homicide where the dying declarations of deceased were admitted in evidence, it was error to refuse to instruct the jury that they should give to such declarations no more weight than they would to the testimony of a witness not subjected to cross-examination.

**7. Evidence—Dying Declaration—Criminal Complaint.**

The fact that a justice of the peace who reduced to writing a dying declaration, afterwards filed the paper in his docket and entered the same as a criminal cause against defendant and issued a warrant thereon, would not preclude its admissibility in evidence as a dying declaration, where it clearly appears that the deceased intended it as a dying declaration concerning the homicide.

**8. Homicide—Instructions—Self-Defense—Burden of Proof.**

In a prosecution for homicide where the defendant relied on his right of self-defense, an instruction that before the killing could be justified on the ground of self-defense "it must appear to the reasonable satisfaction of the jury, from the whole of the evidence, that the defendant, at the time of the shooting, had reasonable cause to believe, and did honestly believe, deceased was about to kill him, the defendant, or do him some great bodily harm," was erroneous. It is sufficient to sustain the plea of self-defense if the defendant, by any evidence in the case, succeeds in raising a reasonable doubt in the minds of the jury of the truth of any essential element of the charge against him.

**9. Instructions—Jury Confined to Evidence.**

In a criminal prosecution the instructions should clearly inform the jury that their findings must be based on the evidence.

**10. Instructions—Murder—Malice.**

In a prosecution for murder the instructions should make it clear to the jury that malice is not a presumption of law, but a question of fact to be determined by the jury from the evidence.

*Error to the District Court of La Plata County:*
*Hon. James L. Russell, Judge.*

Mr. W. A. Reese and Mr. Reese McCloskey, for plaintiff in error.

Mr. N. C. Miller, attorney general, and Mr. I. B. Melville, for the people.

Mr. Justice Campbell delivered the opinion of the court.

The defendant was informed against for the murder of Matt Luxsinger. The killing was admitted and defendant pleaded self-defense. He was convicted of murder of the first degree and the jury fixed the penalty at imprisonment in the penitentiary for life at hard labor. The principal questions argued by counsel are directed to rulings of the court below in giving and refusing instructions, in denying defendant's application for a continuance, to the overruling of his challenge for cause to a juror, and in admitting certain evidence offered by the prosecution.

1. The defendant's application for a continuance and the affidavits in its support are not set forth in the abstract of the record as our rules require, and for that reason alone the errors assigned to the ruling upon it might be disregarded. The evidence which is said to exhibit the disqualification of the challenged juror is found in the abstract, and, in that respect, the overruling of the challenge is thereby fairly presented. But as the judgment must be reversed for errors in giving and refusing instructions, it is not necessary to pass upon the objections assigned to these rulings of the court which occurred before the jury was impaneled.

2. One of the exceptions to the rule which excludes hearsay evidence pertains to dying declarations. They are admissible in evidence "where the death of the deceased is the subject of the charge, and the circumstances of the death are the subject

of the dying declaration." If made when the deceased is *in extremis,* with a belief entertained by him that his death is imminent and there is no further hope for him in this life, they may be admitted in evidence though the defendant was not present at the time they were made and had no opportunity for cross-examination.—1 Roscoe's Criminal Evidence (8th ed.), 55 *et seq.;* Wharton's Criminal Evidence (9th ed.), § 276 *et seq.;* 1 Greenleaf on Evidence (15th ed.), § 156 *et seq.; State v. Gray* (Ore.), 74 Pac. 927.

What are claimed to be the dying declarations of Luxsinger were offered by the people, and admitted by the court. The defendant objects to this ruling because, as he says, when the declarations were made Luxsinger did not believe that he was about to die, nor was it made to appear that he had given up all hope of recovery. He was shot by the defendant in the forenoon of November 13, 1903, and died about 4:40 in the afternoon of the following day. At different times during the day of his death, while not in express terms, saying that he believed death imminent, and that he had no hope of recovery, Luxsinger made other statements from which it is clearly apparent that such was his firm belief. About three o'clock on the afternoon of this day he made a voluntary statement, which was reduced to writing by a justice of the peace, then present, several other witnesses also being present, and at its conclusion, which was about forty minutes before death ensued, the writing was read over to Luxsinger, and he said it was true, though he did not sign the same, but expressed his willingness to verify it.

This statement, as written out by the officer, in all substantial particulars corresponds to, and harmonizes with, what a number of witnesses testify that Luxsinger said about the shooting earlier in the day.

Luxsinger was seriously wounded, having been shot by the defendant three times, two of the shots taking effect in vital parts of his body. Voluntarily, as well as in response to questions put to him, Luxsinger repeatedly said on the day of his death that he had "got to die," and that he would never get over the shots which he had received, that he was "about dead," and that he was "done for." To one of his friends he said: "Well, Reese, they've got me this time." To which his friend answered: "Don't worry about that; you may get over this." Luxsinger replied: "No, I'll never get over this. I've got to die." When one of the witnesses was about to put a tea-kettle on the stove for the purpose of warming water for him to drink, and the suggestion was made that the bottom of the kettle would be blackened if placed directly over the fire, Luxsinger replied: "I don't suppose it makes any difference; I'll never use it again any way," and immediately replied when the suggestion was made that the wounds were not so serious as he believed, "Well, I'll never get over this." In speaking of threshing some grain that he wanted to have done on the following day, he remarked that, while the threshing would not do him any good, "it will do some one else some good"; that he was "done for." These and similar expressions were used by Luxsinger throughout the day and before he made the oral and written statements concerning the homicide which the court admitted in evidence.

Mr. Greenleaf, at section 158 of his valuable work on Evidence, says that the admissibility of dying declarations does not depend upon the fact that, at the time, they were stated by the deceased to be made under a sense of impending death; but if it satisfactorily appears, in any mode, that they were made under that sanction, they are admissible.

Our conclusion, from the evidence, is that Luxsinger believed at, and before, the time when he made these declarations that immediate dissolution was at hand, and that there was no hope of his recovery. The ruling of the court admitting the dying declarations was correct.

Defendant also objects to the ruling under which, after the written statement was introduced, oral dying declarations, made at other times, were admitted. It was right. Both kinds are competent.—*State v. Carrington* (Utah), 50 Pac. 526.

3. The prosecution, by oral testimony of the district attorney, showed that before the homicide Luxsinger had caused to be filed an information against defendant for burglary, which was pending when the shooting occurred. This was competent evidence tending to show motive for the killing.—*Kunde v. State*, 3 S. W. 325; *Martin v. Commonwealth*, 19 S. W. 580; *Williams v. State*, 69 Ga. 11; *Hodge v. State*, 12 Southern, 164; *State v. Geddes*, 55 Pac. 919.

4. In one of its instructions to the jury, the court, after stating that if the jury believed that the dying declarations were made under the safeguards which the law throws around them, concluded with the direction that the jury might then consider such declarations in their deliberations. The defendant tendered several instructions to the court to the effect that the jury should give to dying declarations no more weight than they would to the testimony of a witness not subjected to cross-examination. Reputable authorities say that such direction should have been given to the jury, and it was error to refuse the request embodying this principle of law which the tendered instructions contained. In the event of a new trial, such caution should be given.—1 Roscoe's Crim. Evidence (8th ed.), 62 *et seq.; People v. Kraft,*

148 N. Y. 631; *People v. Corey,* 157 N. Y. 332; *State v. Eddon,* 8 Wash. 292; *State v. Trusty,* 1 Pennewill (Del.) 319; 1 Greenleaf on Evidence (15th ed), § 162; Wharton's Crim. Evidence (9th ed), § 276 *et seq.*

5. Still another objection argued is that the declarations of deceased were taken down by a justice of the peace upon a blank criminal complaint, and that officer afterwards filed this paper in his justice docket and entered the same as a criminal cause against defendant and issued a warrant upon it; the point being that this tended to show that the statements of Luxsinger were not intended by him as a dying declaration, but as constituting matter for a criminal complaint.

We do not consider the fact that the justice treated this instrument as a criminal complaint a reason for disregarding it as a dying declaration; for the evidence clearly shows that Luxsinger himself intended it as a dying declaration concerning the homicide under investigation.

6. In instruction No. 14, given by the court of its own motion, the jury were told that if they believed from the evidence that defendant intentionally shot and killed deceased as charged, "then before such killing can be justified on the ground of self-defense, it must appear to the reasonable satisfaction of the jury, from the whole of the evidence, that the defendant, at the time of shooting, had reasonable cause to believe, and did honestly believe, that the deceased was about then to kill him, the defendant, or do him some great bodily harm," etc. In this the court was manifestly wrong. Substantially this instruction has been condemned by this and other courts. It is not incumbent upon the defendant in a criminal case, either by his own evidence or that of the people, or both combined, to prove anything to

the satisfaction of the jury. It is sufficient to sustain
the plea of self-defense if the defendant, by any evi-
dence in the case, succeeds in raising a reasonable
doubt in the minds of the jury of the truth of any
essential element of the charge made against him.—
*Kent v. The People,* 8 Colo. 563, 581; *Babcock v. The
People,* 13 Colo. 515, 523; *Brooke v. The People,*
23 Colo. 375; *McNamara v. The People,* 24
Colo. 61; *Van Straaton v. The People,* 26 Colo. 184;
*Alexander v. The People,* 96 Ills. 96; *Wacaser v. The
People,* 134 Ills. 438; *Smith v. The People,* 142 Ills.
117, 122; *Trumble v. Territory,* 3 Wyoming 280.

A burden was thus put upon the defendant which
the law does not sanction.

7.    Another error argued by defendant's coun-
sel, which of itself might not be sufficient to work a
reversal, demands consideration at our hands. Some
of the instructions required the jury to make their
findings from the evidence; in others this essential
requirement is omitted. In the general instruction
as to legal presumptions in favor of an accused, the
jury are told that the defendant is presumed to be
innocent until his guilt is established beyond a reason-
able doubt; and that the burden of proof is on the
people to establish every material fact necessary to
constitute the prisoner's guilt beyond a reasonable
doubt. But the jury are not told that the guilt must
be established *from the evidence,* or that the people
must establish every material fact *from the evidence.*
In case of another trial the district court should bear
in mind what was said by Chief Justice Hayt in *Gor-
man v. The People,* 17 Colo. 596. After adverting
to the necessity of advising the jury that their find-
ings must be based on the evidence, he observed:
"The charge when considered as a whole ought to
be so clear in this respect that intelligent men will
have this principle of law clearly before them when

deliberating upon a verdict."—See, also, *Boykin v. The People*, 22 Colo. 496, 499.

8. In instructions tendered by the defendant as to his right to rely upon what appeared to him to be imminent danger, the law embodying the principle in question was, in some particulars, more fully and clearly expressed than in the instructions given by the court of its own motion. We deem it fitting further to remark that, if the defendant is tried again, the court should be careful to make it clear to the jury that malice is not a presumption of law, but a question of fact for the jury to determine from the evidence, under instructions of the court.—*Nilan v. The People*, 27 Colo. 206, 211. Instruction No. 9 might be difficult to reconcile with this decision.

Because of the error of the court in giving instruction No. 14, and refusing to give defendant's instruction as to the credit to be given to dying declarations, the judgment is reversed, and the cause remanded for a new trial.

*Reversed.*