## No. 23302.

PEOPLE OF THE STATE OF COLORADO EX REL EDWARD N. JUHAN, DISTRICT ATTORNEY, FIRST JUDICIAL DISTRICT, STATE OF COLORADO *v.* THE DISTRICT COURT FOR THE COUNTY OF JEFFERSON AND THE HONORABLE GEORGE G. PRIEST, ONE OF THE JUDGES THEREOF.

(439 P.2d 741)

Decided March 18, 1968.     Rehearing denied April 29, 1968.

254

EDWARD N. JUHAN, District Attorney, GEORGE C. AU-COIN, Deputy, F. RICHARD HITE, Special Deputy, for petitioner.

F. E. DICKERSON, STANLEY J. WALTER, for respondents.

*En Banc.*

MR. CHIEF JUSTICE MOORE delivered the opinion of the Court.

THE district attorney for the First Judicial District commenced this original proceeding to secure a determination of the constitutionality of an act of the legislature dealing with the defense of insanity in criminal cases. The facts giving rise to the controversy are as follows:

An information was filed in the district court of

Jefferson county in which one Calvin Fulmer was accused of the crime of first degree murder. He entered a plea of not guilty by reason of insanity at the time of the alleged commission of the crime. A motion was filed by his attorney seeking entry of an order of court directing the prosecution to establish the sanity of the defendant to the satisfaction of the jury, beyond a reasonable doubt, notwithstanding the provision of C.R.S. 1963, 39-8-1 as amended by Chapter 163, Session Laws of 1967, which purports to require a defendant who enters a plea of not guilty by reason of insanity to establish, by a preponderance of evidence, the fact of insanity. The statute in pertinent part reads as follows: "Plea of insanity. — (3) (a). Upon the making by the defendant of the plea of insanity at the time of the alleged commission of the crime, a jury shall be impaneled as in criminal proceedings and the issue of the defendant's sanity or insanity shall be decided by such jury in accordance with section 39-8-3. The burden shall be on the DEFENDANT to prove by a preponderance of the evidence that HE was INSANE at the time of the alleged commission of the crime."

The trial court sustained the motion of counsel for Fulmer, holding that the above quoted statute violated the constitution of the State of Colorado. Thereupon this original proceeding was commenced and we issued a rule to show cause as prayed for in the petition. The respondents have appeared, briefs have been filed, and oral arguments have been heard.

The answer and brief filed by respondents urge that the rule be discharged for three reasons as follows:

"I. C.R.S. 1963, 39-8-1, as amended, 1967 Session Laws, is in violation of Article III and Article VI, Section 21 of the Colorado Constitution in that C.R.S. 39-8-1, as amended, 1967 Session Laws, is an usurpation and invasion of the judicial power vested in the Supreme Court of Colorado to promulgate rules governing practice and procedure in criminal cases.

"II. C.R.S. 1963, 39-8-1, as amended, 1967 Session Laws, violates the due process clause of Article II, Section 25, of the Colorado Constitution and the XIV Amendment to the United States Constitution in that it shifts the burden of proof in a criminal case to the defendant.

"III. Since C.R.S. 1963, 39-8-1, as amended, 1967 Session Laws, is constitutionally deficient, there is presently no existing statutory procedures with reference to the burden of proof in insanity cases: it therefore follows that the common law of Colorado applies in this case and under the common law the burden of proof is upon the district attorney to prove the defendant's sanity beyond a reasonable doubt."

We consider but one of the points relied on by counsel for Fulmer. Our determination of it disposes of the controversy. For reasons hereinafter stated we hold that the provisions of the statute which state: "The burden shall be on the defendant to prove by a preponderance of the evidence that he was insane at the time of the alleged commission of the crime," violates Article II, section 25, of the constitution of Colorado which provides: "No person shall be deprived of life, liberty, or property, without due process of law."

There are a number of fundamental principles of law applicable to criminal cases which have been so universally accepted and applied in this country as to have become component parts of our understanding of the term "due process of law." Among such basic concepts we find the doctrine that, at the outset of the trial, an accused person is presumed to be innocent of the offense charged against him; that the state must satisfy the jury of the guilt of the defendant beyond a reasonable doubt; and that if upon any material issue of fact essential to guilt the jury has a reasonable doubt, the defendant is entitled to the benefit of that reasonable doubt and a verdict of not guilty. Numerous cases decided by this court have imbedded these basic fundamentals in the main stream of the criminal law.

In *Ingles v. People,* 92 Colo. 518, 22 P.2d 1109, we find the following pertinent language:

"One who is insane when he commits an act prohibited by law cannot be held guilty of a crime. A statute providing that insanity shall be no defense to a criminal charge would be unconstitutional. *State v. Strasburg,* 60 Wash. 106, 110 Pac. 1020. One accused of crime is entitled to raise and have a jury pass upon the question of whether he was sane or insane when he committed the act with which he is charged. At some stage of the proceedings he must be given an opportunity to raise that question. Before the act of 1927, the question could be raised under a general plea of not guilty. In order to avoid or lessen certain abuses that were believed to exist under that practice, the Legislature, by the act in question, changed the method of raising the question of insanity, but left to the defendant all the substantial rights he formerly enjoyed. Now, as formerly, he can raise the question of insanity, and have that question passed upon by a jury of twelve men. Now, as formerly, when the question is properly raised, the burden is upon the people to prove beyond a reasonable doubt that the defendant, when he committed the act charged, was sane. Now, as formerly, if the evidence raises in the minds of the jury a reasonable doubt of the defendant's sanity at that time, they must find the defendant not guilty of the crime charged. * * *"

In *Graham v. People,* 95 Colo. 544, 38 P.2d 87, this court said, with reference to an insanity plea:

"* * * The defendant never has the burden of proving insanity. If, upon a consideration of all the evidence, the jury have a reasonable doubt whether the defendant was sane or insane at the time of committing the act they must find the defendant not guilty. * * *"

Other earlier decisions are cited in the *Graham* case, *supra,* all of which lead inescapably to the conclusion that insanity is a defense in criminal cases and if that defense is offered and leaves a reasonable doubt in the

minds of the jury, as to whether the accused was sane or insane, then a not guilty verdict must be returned.

In *Mundy v. People*, 105 Colo. 547, 100 P.2d 584, this court recognized that prior to the legislative act of 1927, which first required the entry of a special plea of "not guilty by reason of insanity," the defense of insanity was available to the defendant under a general plea of not guilty. This court said in that case that:

"* * * By the 1927 act the procedure only has been changed and *the substance of the defendant's constitutional right* to a jury trial on the question of insanity has been preserved." (Emphasis added.)

In *Carter v. People*, 119 Colo. 342, 204 P.2d 147, this court said, *inter alia:*

"* * * Upon the issue of insanity, if a reasonable doubt existed in the minds of the jury as to whether the dedefendant was, or was not, sane, he was entitled to a verdict of not guilty by reason of insanity."

In *Becksted v. People*, 133 Colo. 72, 292 P.2d 189, the question presented for determination was:

"In the prosecution of a charge of first degree murder in which the accused has entered a plea of not guilty by reason of insanity as well as that of not guilty, and where a separate trial is had upon the issue of insanity; is that trial to be conducted as a 'civil' action"?

The opinion disposes of the issue as follows:

"This question is answered in the negative. In a criminal case the defendant can assert as many defenses as can be supported by evidence. If affirmative defenses such as self-defense or alibi are presented the issues thereon are tried as part of the criminal case, and if any such defense raises in the mind of a jury a reasonable doubt as to the defendant's guilt he should be acquitted. The defense of insanity stands upon the same footing. The fact that this issue has been separated from other questions for the purpose of trial does not make a civil case out of that which is tendered as a defense to an accusation of crime. * * *"

The language of these cases has taken such form over a period of many years as to become part and parcel of our concept of constitutional "due process of law." As thus interpreted by the judiciary over the years the due process clause of the state constitution includes the doctrine that the state must prove guilt beyond a reasonable doubt, and that the accused cannot be required by legislative enactment to prove insanity or any other defense by a preponderance of the evidence.

Interpretations given constitutional provisions by the judiciary are not subject to change by the legislature. The interpretation given by the courts to the constitution are incorporated in the instrument itself and are beyond the power of the legislative branch of government to change. This of course is not true of legislative acts. If the courts misconstrue or misinterpret the intent of the legislature concerning a statute, there is nothing to prevent it from correcting the error and making clear that which was intended.

Addressing ourselves now to comments contained in the dissenting opinions, we have elected to fortify the foregoing with a more detailed analysis of the long established law in this state.

We are determining by this decision what "due process of law" means in the territorial limits of the sovereign State of Colorado, under the provisions of our own constitution. We are not in the least concerned with what it meant in the State of Oregon in the year 1864, or at any time thereafter. Neither are we concerned with what it may or may not mean in any other state mentioned in the dissenting opinion.

We propose to show that in the State of Colorado we have given a stature to a "fundamental" doctrine by long continued adherence thereto, which has brought that concept within the coverage of the due process clause of the state constitution, which means that the doctrine cannot be changed by the General Assembly.

There is not the slightest requirement that

the meaning of "due process of law" shall be the same in each of the fifty states. The Supreme Court of the United States has never nullified an interpretation of due process by a state supreme court which might be given by a federal court construing the Constitution of the United States. No state has yet been required to accept as all-inclusive or all-exclusive the federal court determination of what activities of the state fall within or lie without the ambit of due process of law under the United States Constitution. What the United States Constitution does to state authority is this: It says that the state cannot deny a right or impose a liability which is contrary to the federal concept of due process of law. It does *not* say that a state has no right, under its state due process clause, to create protections for its citizens which might not be required under the federal concept. So long as state action does not deny a right protected under the federal concept of due process, or impose a liability prohibited thereby, the federal power will not nullify the rights and protections which, within the state, are recognized as part and parcel of due process under the state constitution; and that is exactly what happened in *Leland v. Oregon,* 343 U.S. 790, 72 S. Ct. 1002, 96 L.Ed. 1302. See *Snyder v. Massachusetts,* 291 U.S. 97, 54 S. Ct. 330, 7 L.Ed. 674.

▆ Under the old 1864 Oregon statute an accused who defended on the ground of insanity had the burden of establishing insanity beyond a reasonable doubt. This procedure was always followed in that state. In 1948 the Oregon court held that the statute did not violate either federal or state due process. Obviously at the state level there had not developed a body of law creating a "principle of justice so rooted in the traditions and conscience of our people as to be ranked fundamental." *Brown v. Mississippi,* 297 U.S. 278, 56 S. Ct. 461, 80 L.Ed. 682. Exactly the opposite has occurred in the State of Colorado. The effect of the decision of the United States Supreme Court was to say: "If that is

what the State of Oregon wants under state due process it can have exactly that, because it does not violate the federal concept of due process." Certainly if the Supreme Court of Oregon had developed a deep-rooted concept of criminal justice in this particular, as has been done in Colorado, and if Oregon had said that the statute in question offended a "fundamental" concept of due process, the Supreme Court of the United States would have been obligated to affirm. Again, we say that there is no requirement that due process of law shall operate as a "straightjacket" forcing every sovereign state to give *no more,* as well as no less, protection than that which would be recognized at the federal level.

Attention is directed to a statement in the dissenting opinions that, "This is the first time that any court in a reported decision has ever held that a statute or rule of court which places on the defendant the burden of proving insanity violates due process." The answer is simple as far as the law of Colorado is concerned. Never before in the history of Colorado has the legislature purported to make this very drastic change in the firmly established concept of criminal law, that a reasonable doubt concerning the validity of any defense entitles an accused person to a verdict of not guilty. Because no such statute has ever been passed heretofore in Colorado the test of constitutional "due process" has not been applied. Nevertheless, every effort to bring about by other means the result contemplated by the statute has been nullified by this court in countless decisions, all of which have held that such a result is contrary to long established fundamental principles of criminal justice in this state. There has been no need heretofore to mention "due process" because the long line of decisions established a "principle of justice so rooted in the traditions and conscience of our people as to be ranked fundamental." Application of the rule of stare decisis controlled.

The recently enacted legislative act now considered presents to the court for the first time, under the due process clause of our constitution, the question of the power of the legislature to destroy all the numerous decisions of this court on this fundamental doctrine. The legislature has attempted to do by statute that which for almost one hundred years this court has held could not be done without violating fundamental principles of criminal justice. Thus "due process" of necessity becomes for the first time the basis of decision. Where stare decisis controls a situation "due process" is rarely the ground upon which decision rests. It is drawn into play, however, by a legislative act which fails to recognize constitutional limitations upon legislative power.

The dissenting opinion contains the statement: "Inasmuch, then, as the sanity trial is *not* one to determine the guilt of the accused, the so-called presumption of innocence, for example, I submit has no particular applicability." No authority for such a proposition is cited. We are confident that there is none. In any event this court has held exactly the contrary. In the separate sanity trial the *guilt of the defendant,* as to an essential ingredient of the crime is being finally determined. In *Leick v. People,* 136 Colo. 535, 322 P.2d 674, there was a separate trial on the issue of insanity and this court said:

"* * * Under the *procedural* change provided by the statute, permitting a disposition of the insanity issue before the issue of not guilty, the trial is conducted in sections either before the same or a different jury. Together these sections constitute one trial. (Citing cases.)

"The action is single. Leick was confronted with one charge. To it he directed two defenses, *both of which raised the issue of his culpability.* Success on the issue of insanity would have exonerated him of guilt; failure to prevail on that issue left the issue of not guilty for determination, and on the latter issue he suffered an

adverse verdict. On the single charge one judgment only could be entered. * * *" (Emphasis added.)

To similar effect is the following from *Becksted v. People, supra:*

"* * * The fact that this issue has been separated from other questions for the purpose of trial does not make a civil case out of that which is tendered as a defense to an accusation of crime. * * *"

The argument is made that in a criminal case, even though insanity is a full and complete defense, where that issue by statute must be tried separately no defendant can be found guilty, and for that reason "due process of law" does not require that this very material ingredient of guilt must be established beyond a reasonable doubt. By procedurally requiring a separate trial on this issue of mental capacity to commit any crime — which admittedly is a necessary ingredient of any offense — in some mystical way, it is argued that the material ingredient thus set apart for separate trial shall be governed by rules wholly inapplicable to all other necessary ingredients of the completed offense to be thereafter adjudicated; and this is urged notwithstanding the firmly established doctrine that as to every necessary ingredient of the total crime there must be proof beyond a reasonable doubt. In a substantial number of cases insanity is the only defense relied upon and as a practical matter the accused would be deprived of essential and time honored safeguards and would be required to establish his innocence by a preponderance of the evidence, if the statute is to be upheld.

The argument for such a result, in effect, seems to be that because on the separate trial of the sanity question perhaps only one-half the ingredients of total guilt will be determined, as to that half of total guilt the accused can be required to prove his innocence — lack of mental capacity — by a preponderance of the evidence. If the defendant fails to prove by a preponderance of evidence that this defense is well founded he

has been, at least, fifty per cent convicted, notwithstanding that not one of countless Colorado decisions can be found which in any degree relieves the prosecutors from the burden of proving *every material element of every criminal charge* (100% of the total crime) by evidence sufficient to remove all reasonable doubt. All Colorado decisions from the beginning of territorial days to the present require application of the rule that total guilt must be established beyond a reasonable doubt. Mental capacity to commit a crime is a material part of total guilt for there can be no crime without the *mens rea*.

At the risk of belaboring the point, we will cite only a few of the many decisions of this court in every generation since statehood to the present day, and will quote briefly therefrom pertinent language directly on the point. This will be done in order to dispel any doubt that may exist as to whether the doctrine that, if a jury has a reasonable doubt as to whether any defense offered by an accused is well founded, the accused must be found not guilty, has gained a stature which comes within our concept of due process of law.

It is certain that the "law" to which we refer in the expression "due process of law" does not mean that whatever process is provided by the legislative arm of government shall be the measure of the protection provided by the "due process" clause. As stated by this court in *People v. Max,* 70 Colo. 100, 198 P.150:

"Such a construction would render the constitutional guaranty mere nonsense for it would then mean no state shall deprive a person of life, liberty, or property, unless the state shall choose to do so."

In that opinion this court held that due process of law "must be tested by those principles of civil liberty and constitutional protection which have become established in our system of laws." The hand of the legislature is restrained by the due process clause of our state con-

stitution from overturning "established principles of private rights and distributive justice." The established private right of an accused and "distributive justice" as announced by the following decisions require that any accused person must be found not guilty of crime unless his guilt is established in all material matters beyond a reasonable doubt. The due process clause of the constitution of this state forbids the legislature from destroying in whole or in part any of these fundamental concepts.

We turn now to the decisions and direct attention first to *Kent v. People*, 8 Colo. 563, 9 P. 852, from which we quote the following:

"* * * the burden of proof rests upon the state to prove to the satisfaction of the jury, beyond a reasonable doubt, the existence of *all the material elements* necessary to constitute the crime of murder." (Emphasis added.)

No one has yet contended that mental capacity to commit a crime is not a "material element" of the crime of murder, or any other offense.

We next consider *Babcock v. People*, 13 Colo. 515, 22 P. 817, which was a case in which an instruction to the jury required the defendant to establish a defense "to the satisfaction of the jury by a fair preponderance of the evidence." This court said:

"* * * upon familiar principles of criminal evidence, if the showing be sufficiently strong to create a reasonable doubt of the guilt of the accused as to any grade of the offense included in the indictment, the accused is entitled to the benefit thereof."

From *Brooke v. People*, 23 Colo. 375, 48 P.502, we quote:

"The point made by the defendant, viz., that if by any testimony, whether that introduced in his own behalf or by the prosecution, he succeeds in raising in the minds of the jury a reasonable doubt *as to any essential*

*element in the case,* \* \* \* they should find him not guilty, is good; \* \* \*." (Emphasis added.)

In *McNamara v. People,* 24 Colo. 61, 48 P. 541, the issue arose out of a defense of alibi and the jury was instructed to the effect that the accused had the burden of establishing an alibi. In reversing the judgment this court said, *inter alia:*

"\* \* \* The Court evidently misapprehended the nature of this defense; and instead of treating it as a traverse of a fact that it was incumbent upon the prosecution to establish, to wit, the presence of defendant at the time and place of the occurrence, regarded it as an affirmative and independent defense, that the law imposed the burden of proving upon the accused. \* \* \*

"This was clearly erroneous. In order to avail himself of the defense of alibi, it is not incumbent upon the accused to establish that he was not present at the commission of the crime, or that he was in some other place. If the evidence is sufficient to raise a reasonable doubt in the minds of the jury as to whether he was or was not present at the commission of the crime, he is entitled to an acquittal."

The opinion then quotes from *Kent v. People, supra,* with reference to this rule, as follows:

"The rule relating to the *res gestae,* which we have been considering, applies to all defenses which traverse the averments of the indictment and *go to the essence* of the guilt charged against the accused. \* \* \*" (Emphasis added.)

No distinction can be drawn between a defense of alibi and a defense of insanity. Each of them is a traverse of a necessary "averment of the indictment and go to the essence of the guilt charged against the accused." This point is made crystal clear by the opinion of this court in *Becksted v. People, supra,* written fifty-nine years after the opinion in *McNamara,* during all of which time there has been an uninterrupted, consistent, and very frequent adherence to the doctrine

of *McNamara*. In *Becksted v. People, supra,* this court said:

"* * * In a criminal case the defendant can assert as many defenses as can be supported by evidence. If affirmative defenses such as self-defense or alibi are presented the issues thereon are tried as part of the criminal case, and if any such defense raises in the mind of a jury a reasonable doubt as to the defendant's guilt he should be acquitted. *The defense of insanity stands upon the same footing.* * * *" (Emphasis added.)

In *Van Straaten v. People,* 26 Colo. 184, 56 P. 905, this court was concerned with a case in which the accused was charged with the crime of larceny and the court erroneously instructed in a manner to lead the jury to believe that "the guilt of the accused is a presumption which the law requires shall be made from the fact of his being found in possession * * *." This court reversed and in treating the instruction said: "* * * It is also erroneous in imposing upon plaintiffs in error the burden of satisfying the jury that they came into possession of the property honestly. The law imposes no such burden upon a defendant in a criminal case. * * * If their explanation created a reasonable doubt in the minds of the jury as to that fact, it would be sufficient to rebut the presumption of guilt" (which might arise as an inference of fact from possession).
So in the case at bar if the evidence of insanity offered by the defendant created a reasonable doubt *as to that fact,* "it would be sufficient to rebut the presumption" of sanity which attends prior to plea raising the issue.

In *Zipperian v. People,* 33 Colo. 134, 79 P. 1018, we find:

"* * * It is not incumbent upon the defendant in a criminal case, either by his own evidence or that of the people, or both combined, to prove anything to the satisfaction of the jury."
The court ruled that if the defendant, "* * * by any evidence in the case, succeeds in raising a reasonable

doubt in the minds of the jury of the truth of *any essential element of the charge* made against him," he should be acquitted. (Emphasis added.) The court held that by an instruction comparable to the burden imposed by the statute now being tested, "A burden was thus put upon the defendant which the law does not sanction."

In *Shank v. People,* 79 Colo. 576, 247 P. 559, this court held that on the question of insanity, if a reasonable doubt with regard thereto arose from the evidence, the defendant should be acquitted. An instruction which contained the following quoted language was approved as a correct statement of the law:

"It is not incumbent on the defendant, in order to entitle him to an acquittal on the ground of insanity, to prove to your satisfaction that he was insane when the act was committed. If upon the whole case you believe that the defendant was insane at that time, or if upon the whole case you have a reasonable doubt as to whether or not he was sane at that time, you should find him not guilty."

Shortly after the decision in the above case the 1927 Act was adopted which required the entry of a plea of not guilty by reason of insanity prior to trial, but as has already been conclusively established in the forepart of this opinion, no substantive rights were involved and only the "procedure" by which the issue is raised was changed.

In *McRae v. People,* 101 Colo. 155, 71 P.2d 1042, the language quoted from *Zipperian v. People, supra,* was set forth and reaffirmed as a correct statement of the law. *Russell v. People,* 125 Colo. 290, 242 P.2d 610 again applies the rule, as does *Ciccarelli v. People,* 147 Colo. 413, 364 P.2d 368, in which it is referred to as a "fundamental rule." In *Leonard v. People,* 149 Colo. 360, 369 P.2d 54, we find the following:

"* * * It is not incumbent upon the defendant to prove anything to the satisfaction of the jury; rather, it is

sufficient if he, by any evidence in the case, succeeds in raising a reasonable doubt in the minds of the jury of the truth of any essential element of the charge against him."

In conclusion, at long last, we return to *Becksted v. People, supra,* and emphasize the holding in that case that:

"* * * If affirmative defenses such as self-defense or alibi are presented the issues thereon are tried as part of the criminal case, and if any such defense raises in the mind of a jury a reasonable doubt as to the defendant's guilt he should be acquitted. *The defense of insanity stands upon the same footing. The fact that this issue has been separated from other questions for the purpose of trial does not make a civil case out of that which is tendered as a defense to an accusation of crime. * * *"* (Empsasis added.)

That is exactly what the legislature tried to accomplish by the act under discussion in this case. It purported to do the very thing that was attempted by instruction in *Becksted.* It cannot be done either by instruction or by act of the legislature for the very simple reason that in this state our concept of due process of law prohibits it. In the instant case the trial court ruled properly.

The rule to show cause is discharged.

MR. JUSTICE MCWILLIAMS and MR. JUSTICE KELLEY dissent.

MR. JUSTICE MCWILLIAMS dissenting.

The majority hold that 1965 Perm. Supp., C.R.S. 1963, 39-8-1, as amended by Chapter 163, Session Laws of 1967, is unconstitutional because it violates Article II, §25 of the Colorado constitution. With this conclusion I am in very definite disagreement, as the statute in question in my view of the matter does not offend due process.

Article II, §25 of the Colorado constitution provides

that "no person shall be deprived of life, liberty or property, without due process of law." This provision of course parallels that portion of the XIV Amendment to the United States Constitution which prohibits a state from depriving any "person of life, liberty, or property without due process of law. . . ." In this regard, as I understand it, though the majority of this court hold that the statute under consideration offends the due process clause of our Colorado constitution, they do not hold the statute to be repugnant to so-called federal due process. In view of *Leland v. Oregon*, 343 U.S. 790, 72 S. Ct. 1002, 96 L.Ed. 1302, the majority of course could not very well declare the statute to violate federal due process. And it is still a bit difficult for me to understand just how the statute with which we are here concerned *does not* violate *federal* due process, but at the same time *does* violate *state* due process.

Prior to 1967, the applicable statute in this state provided that in a trial stemming from the entry in a criminal proceeding of a plea of not guilty by reason of insanity "the burden shall be on the prosecution to prove by a preponderance of the evidence that the defendant was sane at the time of the alleged commission of the crime." See 1965 Perm. Supp., 1963, 39-8-1(3). The General Assembly in 1967, however, amended this particular section so as to read as follows: "[t]he burden shall be on the defendant to prove by a preponderance of the evidence that he was insane at the time of the alleged commission of the crime." Accordingly, the question is whether this amendment, which casts upon a defendant who pleads not guilty by reason of insanity the burden of establishing his insanity by a preponderance of the evidence, deprives the defendant of either his life, liberty, or property without due process of law. I do not believe that it does, and I shall now attempt to demonstrate why this statute does not violate the due process clauses of either our state or federal constitution.

At the outset it is well to examine rather carefully the precise nature of the proceeding which results from the entry of a plea of not guilty by reason of insanity. A plea of not guilty by reason of insanity is somewhat in the nature of a confession and avoidance in the sense that insofar as the plea itself is concerned, the defendant who elects to enter the plea seeks to avoid the consequences of his otherwise criminal actions by contending that he is insane and not accountable therefor. By this statement I do not mean to be understood as saying that a defendant cannot join a general plea of not guilty with a p.ea of not guilty by reason of insanity. He may, of course. What I am saying, however, is that the trial which is precipitated by a plea of not guilty by reason of insanity is not concerned with the defendant's guilt or innocence, as such, but is only concerned with his mental status, *i.e.*, is the defendant insane? Furthermore, the statute set forth in 1965 Perm. Supp., C.R.S. 1963, 38-9-3 provides that where the issue of insanity is raised in a criminal proceeding the matter should be determined in a trial which is completely separate and apart from the trial of the so-called main issue in the case, namely the guilt of the accused. And the fact that in a given case a defendant may be adjudged to be sane certainly does not mean that he is guilty of the crime with which he is charged. That is another issue to be separately litigated and determined.

Inasmuch, then, as the sanity trial is *not* one to determine the guilt of the accused, the so-called presumption of innocence, for example, I submit has no particular applicability. This is so inasmuch as the issue as to guilt, or not, is to be resolved in a separate and different proceeding where the presumption of innocence would of course come into play. Although at the outset of a trial to determine the guilt of the defendant there is a presumption of innocence, there never has been any presumption of innocence by reason of insanity. As a matter of fact, as concerns the issue of sanity, the pre-

sumption has always been to the contrary, namely that a defendant even though he has pled innocence by reason of insanity is nonetheless still presumed to be sane. This is the presumption which the majority in my opinion failed to properly recognize as playing an important role in the present controversy. And the reason for this presumption of sanity is the belief, which I indeed trust is correct, that the majority of people are sane.

Lest it be thought that Colorado is the only state to place on the defendant the burden of proving insanity, it should be pointed out that among the several states there presently is, and for a long time has been, a very pronounced split of authority as to whether the People have the burden of proving the accused's sanity or, conversely, the defendant has the burden of establishing his insanity. In Weihofen, Mental Disorder as a Criminal Defense 212-272 (1954) that learned author and authority indicates that the American courts are almost evenly divided on the question as to whether the People or the defendant has the burden of proof on the issue of insanity. Professor Weihofen lists those jurisdictions which either by statute or judicial decision have placed this burden of proof on the defendant as follows: Alabama, Arkansas, California, Delaware, Georgia, Iowa, Kentucky, Louisiana, Maine, Minnesota, Missouri, Montana, Nevada, New Jersey, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, Texas, Virginia, Washington and West Virginia.

And, as indicated, the rule that the defendant has the burden of proving insanity when he elects to plead such a defense is most certainly not one of recent origin. By way of example, Oregon in 1864 enacted a statute providing that the defendant must prove insanity beyond a reasonable doubt if he would avoid responsibility for his acts. Indeed, that would appear to be the very rule of the famous *McNaghten* case, wherein it was stated: "[T]he jurors ought to be told in all cases that every

man is to be presumed to be sane, and to possess a sufficient degree of reason to be responsible for his crimes, until the *contrary be proved to their satisfaction*; and . . . . to establish a defense on the ground of insanity, *it must be clearly proved that*, at the time of the committing of the act, the party accused was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing . . . ." (Emphasis added.)

I recognize, however, that prior to 1967 in Colorado the burden of proof in a so-called insanity trial was admittedly placed on the prosecution. This rule was initially the result of judicial decision, and then later by statute. It is perhaps of historical interest to note that when this court by judicial decision adopted the rule that the People had the burden of proof in this regard it was not on any basis that "due process" required such a rule. On the contrary, it was simply on the basis that such rule was then believed to be "the better doctrine" and as of that time, at least, represented the so-called "weight of authority." See, for example, *Pribble v. People,* 49 Colo. 210, 112 P. 220. Initially, then, I contend that this court, or the General Assembly, could have gone "either way" on the question as to whether the People or the defendant had the burden of proof when the defendant pleads insanity. Such being the case, the fact that the court and then the General Assembly decided to place the burden on the People does not in my view of the matter mean that such determination is so engrafted onto due process that the rule could never thereafter be changed except by constitutional amendment.

Furthermore, my attention has not been directed to any reported decision from any jurisdiction where a statute of the type with which we are here concerned has been held to be violative of due process. And on the contrary there *are* decisions which hold that such sta-

tutes are *not* violative of "due process." Let us examine some of them.

Reference should first be made to *Leland v. Oregon, supra*. In that case the United States Supreme Court was called upon to determine whether a statute of Oregon, which placed upon a defendant who pleads not guilty by reason of insanity the burden of proving his insanity beyond a reasonable doubt, violated the due process clause of the XIV Amendment. In holding that the statute there under consideration, which incidentally goes a bit further than does our statute on the subject, did *not* violate due process, the United States Supreme Court flatly declared that casting the burden on the defendant on the issue of sanity did *not* violate "generally accepted concepts of basic standards of justice" and did not offend "some principle of justice so rooted in the traditions and conscience of our people as to be ranked fundamental." I agree with this appraisal of the matter. I recognize that there was a dissent by two justices in the *Leland* case, and I suggest that the majority of this court in the instant case are most definitely out of harmony with the majority in the *Leland* case, and on the contrary are adopting the rationale of the dissent as voiced by Mr. Justice Frankfurter. This I choose not to do.

As above noted, the state of Oregon in 1864 enacted a statute which thrust on the defendant the burden of establishing his insanity beyond a reasonable doubt. In upholding the constitutionality of this statute and declaring that the statute did not violate due process, the Supreme Court of Oregon in *State v. Grieco*, 184 Ore. 253, 195 P.2d 183 declared as follows:

". . . . The sole question here involved is whether it was within the power of the legislature to place upon a defendant accused of a crime the burden of establishing his insanity beyond a reasonable doubt. Does the statute so deprive the defendant of the benefit of the presumption of innocence that it may be said that he has been

convicted without due process? It is not for this court to invade the province of the legislature and to determine which of the various theories supported by judges or law writers is the most logical and reasonable. The strong argument of counsel for defendant on this phase of the case would be more appropriately addressed to the legislature. . . . . It is not in the province of the courts to question the policy of the law or to say that the rule established in such cases is inhuman, or that the state should, in any contingency, be required to establish the fact of sanity, like any other fact, beyond a reasonable doubt."

In *United States v. Naples*, 192 F. Supp. 23 (1961) District Judge Alexander Holtzoff made the following comment:

"Ineluctable logic, therefore, leads to the conclusion that when Congress directed that any person acquitted on the ground of insanity should be forthwith committed to a mental institution, it intended by necessary implication to provide that an acquittal on the ground of insanity should include an affirmative finding of insanity. It inevitably follows that thereby Congress shifted the burden of proof from the Government to the defendant to establish the defense of insanity, instead of requiring the Government, in effect, to disprove it. Necessarily, proof on behalf of the defendant on this issue would not have to be beyond a reasonable doubt, but proof by a preponderance of evidence would be sufficient. *There is no question that it is within the purview of the legislative branch of the Government to regulate the burden of proof, and that it is not violative of due process of law to cast on the defendant the burden of proof on the issue of insanity.*" (Emphasis added.)

Without unduly burdening this dissent by citing and quoting from decisions of other courts, I would again observe that this is the first time that any court in a reported decision has ever held that a statute or rule

of court which places on the defendant the burden of proving insanity violates due process. In this connection it is to be noted that the majority cite no prior decisions from this or any other court which support their conclusion that due process precludes a statute of the type with which we are here concerned. To the contrary, the cases cited in the majority opinion are Colorado cases which simply recognize and give effect to a rule which was first promulgated by judicial decision, and later by statute, which places the burden on the People to prove the defendant's sanity. Being only a judicially announced rule, then, the rule *could* have been changed by this court, if it had been so inclined, or by the legislature, as it in fact did in 1967. This in my view necessarily follows, *unless* by our act of announcing a rule we have thereby expanded due process to encompass the very rule itself. And I do not subscribe to any such line of reasoning.

It would appear that perhaps the same argument was made in the *Leland* case. In any event, after recognizing that the prevailing rule, historically speaking, was to place the burden on the defendant to prove his insanity, since most men are presumed sane, the United States Supreme Court in the *Leland* case then went on to state: "This [i.e. casting the burden of proof on the defendant to prove insanity] remains the English view today. In most of the nineteenth-century American cases, also, the defendant was required to 'clearly' prove insanity, and that was probably the rule followed in most states in 1895, when *Davis v. United States* was decided. In that case this Court, speaking through Mr. Justice Harlan, announced the rule for federal prosecutions to be that an accused is 'entitled to an acquittal of the specific crime charged if upon all of the evidence there is reasonable doubt whether he was capable in law of committing crime.' In reaching that conclusion, the Court observed:

'The views we have expressed are supported by many

adjudications that are entitled to high respect. If such were not the fact, we might have felt obliged to accept the general doctrine announced in some of the above cases; for it is desirable that there be uniformity of rule in the administration of the criminal law in governments whose constitutions equally recognize the fundamental principles that are deemed essential for the protection of life, and liberty.'

"*The decision [i.e. Davis v. United States] obviously establishes no constitutional doctrine, but only the rule to be followed in federal courts. As such, the rule is not in question here.*" (Emphasis added.)

In other words, insofar as federal criminal procedure was concerned, the United States Supreme Court in *Davis v. United States*, 160 U.S. 469, 16 S. Ct. 353, 40 L.Ed. 499 placed the burden on the prosecution to prove the defendant sane beyond a reasonable doubt. But did the fact that the United States Supreme Court laid down such a rule to regulate sanity trials in the federal courts mean the rule itself thereafter became a part of due process? I suggest that in the *Leland* case the United States Supreme Court held that such is not the case, when it tersely commented that the "decision obviously establishes no constitutional doctrine, but only the rule to be followed in federal courts."

In like manner, then, I suggest that the fact that this court initially promulgated a similar rule did not mean that the rule thus promulgated became a part of due process. Paraphrasing the language of the *Leland* case, our decision obviously established no constitutional doctrine, but only the rule to be followed in our state courts. In summary, I submit the following:

1. traditionally and historically due process most certainly did not preclude the enactment of a statute placing the burden of proof on the defendant to establish his insanity;

2. the fact that this court by decision adopted a rule which placed the burden of proof on the prosecution to

prove sanity did *not* mean that the rule itself was thereby injected into, and became an integral part of due process, as the decision and the rule announced therein did *not* establish a constitutional doctrine;

3. therefore the rule which this court thus promulgated can be changed by the legislature, and in fact it was changed in 1967, and the statute thus enacted does *not* violate due process, be it state or federal.

It goes without saying, though I shall say it, that we are not here concerned with the "wisdom" of the statute under consideration. Whether as a matter of policy it is preferable that the burden of proof rest on the prosecution or the defendant is in my view a matter to be debated and resolved by the legislature. The only issue to be resolved by the courts is whether our General Assembly had the power to lawfully enact into law a statute casting the burden of proof on the defendant to prove his insanity. As I see it, the 1967 General Assembly possessed such power, and it is for the reasons which I have elaborated upon above, that I now dissent. In my opinion the rule should be made absolute and the respondent judge directed to follow the statute.

MR. JUSTICE KELLEY has authorized me to state that he joins me in this dissent.

MR. JUSTICE KELLEY dissenting:

I wish to be recorded as joining in Mr. Justice McWilliams' dissenting opinion. Also, because of the public importance of the step being taken by the majority of this court, I feel compelled to briefly supplement the views expressed in the dissenting opinion.

In his dissenting opinion Mr. Justice McWilliams noted that:

"* * * my attention has not been directed to any reported decision of any jurisdiction where a statute of the type with which we are here concerned has been held to be violative of due process. And on the contrary

there *are* decisions which hold that such statutes are *not* violative of 'due process.' "

*People Ex Rel. Attorney General v. Barksdale,* 104 Colo. 1, 87 P.2d 755, reminds us:

"* * * that a presumption of constitutionality attaches to the act in question, as it does to all legislation passed by the General Assembly * * *."

This court, in *Police Protective Association of Colorado v. Warren,* 101 Colo. 586, 76 P.2d 94, sets forth a principle long adhered to, which, it seems to me, is being overlooked by the majority, when it states:

"* * * Our purpose is not to search for reasons why a law should be held unconstitutional, but rather to accept it as constitutional, unless its repugnancy to the fundamental law clearly appears * * *."

Although I am not sure that the majority will concede that this is a case of first impression, because of its position that the burden of proof has *always* been on the people to establish sanity when made an issue in a criminal case, I submit that it is a case of first impression. As pointed out by Mr. Justice McWilliams, "this is the first time that any court in a reported decision has ever held that a statute or rule of court which places on the defendant the burden of proving insanity violates due process."

After this preface, I would like to remind my colleagues of the majority that there is another rule of this court which they have overlooked or ignored. It is "* * * The rule of this court, as has been announced, is, on questions of first impression, to follow the rulings of the supreme court of the United States * * *." *Post Printing Co. v. Denver,* 68 Colo. 50, 189 P. 39; *Denver Local Union No. 13 v. Perry Truck Lines,* 106 Colo. 25, 101 P.2d 436.

Adherence to this policy would require us to follow *Leland v. Oregon,* 343 U.S. 790, 72 S. Ct. 1002, 96 L.Ed. 1302, which is thoroughly discussed in the dissent of Mr. Justice McWilliams.

The majority opinion implies that had the legislature at sometime in the past put the burden of establishing insanity on the defendant it would have been valid. However, the rule that because initially the courts and then the legislature placed the burden of establishing the sanity of the defendant upon the People, when made an issue, it has become a part of due process. The majority is in effect admitting the authority was in the legislature, but that by virtue of at one time having taken one course it has now lost the right to change its course. This position has not always prevailed, for we note that in *Wilmore v. Annear,* 100 Colo. 106, 65 P.2d 1433, the court held that:

"* * * If constitutional power to do an act is non-existent it cannot be acquired by legislative assertion or attempted exercise of such power; *if it is existent it is not lost by a failure, for however long a time, to exercise it."* (Emphasis added.)

My differences with the majority relate to the question of whether the rule as to burden of proof laid down in the decisions relied upon in its opinion, under the circumstances of the court procedures then being followed and the then legislation, actually created a constitutional right which cannot now be changed by the legislature.

Basically, *due process* contemplates a fair and just hearing and a full and adequate opportunity for a defense. *Powell. v. Alabama,* 287 U. S. 45. Mr. Justice Cardozo, in *Snyder v. Massachusetts,* 291 U.S. 97, stated it in this language:

"* * * Due process of law requires that the proceedings shall be fair, but fairness is a relative, not an absolute concept. It is fairness with reference to particular conditions or particular results. 'The due process clause does not impose upon the States a duty to establish ideal systems for the administration of justice, with every modern improvement and with provision against every possible hardship that may befall.' *Ownbey v.*

*Morgan, supra,* p. 110. What is fair in one set of circumstances may be an act of tyranny in others * * *."

In the *Snyder* case the court was reviewing a conviction for murder under the laws of Massachusetts. Upon motion of the district attorney the court permitted the jury, in the company of the lawyers and the judge, to view the scene of the crime. The trial judge, however, denied the defendant the right to accompany the jury in alleged violation of his right to be present at every step of the trial. It is interesting to note that the United States Supreme Court held that it was not a denial of due process, but noted:

"* * * It is one thing to say that the *prevailing practice* is to permit the accused to accompany the jury, if he expresses such a wish. *It is another thing to say that the practice may not be changed without a denial of his privileges under the Constitution of the United States* * * *." (Emphasis added.)

I think the practice which has prevailed in this state for many years by virtue of both court decision and legislation in reference to the burden of proof in criminal cases, where the defendant pleads not guilty by reason of insanity, is one that *can* be changed by the legislature without a denial of due process.

I would go further and say that the practice has been the *law* of this state, but like most laws it is one subject to change by the legislature.

To me an examination of the procedure heretofore followed and that contemplated by the statute invalidated in these proceedings clearly shows that there is no undue hardship placed upon the defendant by shifting the burden of proof.

Under earlier statutes it was within the discretion of the trial court to try the sanity issue and the substantive offense at the same time, '35 C.S.A., c. 48, § 509, as amended Laws 1951; C.R.S. '53, 39-8-3 and (1), Supp.; *Castro v. People,* 140 Colo. 493, 346 P.2d 1020; *Martinez v. People,* 124 Colo. 170, 235 P.2d 810.

Under those circumstances there was justification for placing the burden of proof as to both issues upon the People. Otherwise, the jury could very easily become confused to the prejudice of the defendant.

Under the statutes, following the plea of not guilty by reason of insanity, the defendant is committed to either Colorado Psychopathic Hospital or the State Hospital for observation and examination by physicians who are specialists in mental diseases, for a period not exceeding one month, or the judge may appoint a commission of one to three qualified physicians to examine the defendant at the jail. These physicians may be called by either the People or the defendant or by the court for examination and, of course, cross-examination by the respective parties. C.R.S. 1963, 39-8-2(3) (a):

"It shall be permissible in any such observation and examination for said physicians to use confessions and admissions of the defendant, and any other evidence as to the facts and circumstances surrounding the commission of the crime, for the purpose of questioning the defendant thereto to aid them in forming an opinion as to the sanity or insanity of the defendant; and it shall also be permissible for them to administer or cause to be administered to the defendant sodium amytal, sodium pentothal, metrazol and like drugs, and to use or cause to be used on the defendant the polygraph, as an aid to them in forming an opinion as to the insanity or sanity of the defendant; and it shall be permissible for such physicians, provided the same entered into the formation of such an opinion, to testify as to the result of such administration or use and as to statements and reactions of the defendant in the course of such administration and use."

The present statute makes separate trials mandatory. The legislature as the basis for the change may have adopted the reasons advanced by this court in *Trujillo*

*v. People,* 150 Colo. 235, 372 P.2d 86, where it is said:

"* * * A much wider area of conduct on the part of a defendant can be made the subject of inquiry in a trial relating to his sanity, than would be permissible in a trial upon a plea of not guilty. Any abnormal conduct, whether related to the act forming the basis of the accusation or not, may be relevant and important on the issue of his mental condition. Conversely, evidence of normal conduct, and actions reflecting the usual and ordinary under the circumstances, may be shown to prove sanity. The separate trial is provided in order to protect the accused from prejudice which might arise in the minds of a jury trying both the issue of guilt and of mental condition. Separate trials of these issues are provided to safeguard, as far as possible, against the prejudice likely to arise by reason of the wide variety of evidence which might be competent on the issue of insanity and which would not be admissible upon trial of the not guilty plea."

Also, it could well be that the legislature by the now invalid amendment was attempting to eliminate an abuse which came to light in *French v. District Court,* 153 Colo. 10, 384 P.2d 268. *French* was an original proceeding to compel the trial court to reinstate a plea of not guilty by reason of insanity. Upon the entry of the plea French was committed for observation, but refused to talk to the psychiatrists. This court observed that, "If the case is to be tried on all issues at the same time, any statements made to the psychiatrists would necessarily be admitted as bearing upon the issue of mental condition" and, in effect, said the court, he did not have to cooperate.

By providing one trial to determine guilt, the legislature corrected two problem areas by:

1. Eliminating the confusion and the difficulties inherent in a single trial resulting from the introduction of evidence that properly relates only to sanity or insanity, and

2. Eliminating any advantage to the defendant from the intentional refusal to cooperate with the psychiatrists.

Such incarceration and examination does not offend against the self-incrimination provision of the constitution. *Ingles v. People,* 92 Colo. 518, 22 P.2d 1109.

In *Bishop v. Salida Hospital District,* 158 Colo. 315, 406 P.2d 329, this court recognized that the legislature has the power to declare that the existence of one fact shall be presumptive evidence of another, citing criminal cases in support of the statement. See: *Garcia v. People,* 121 Colo. 130, 213 P.2d 387; *Roberts v. People,* 78 Colo. 555, 243, P. 544; *Robertson v. People,* 20 Colo. 279, 38 P. 326.

The majority recognize the rule that all of us are presumed to be sane, and that where the insanity plea is interposed that the defendant must "go forward" with some evidence of his insanity to overcome the presumption, at which point the burden shifts to the People to establish sanity beyond a reasonable doubt.

Now, if the legislature can say that the sanity of the defendant is a prima facie fact, it certainly is a very short step indeed to say that the defendant's proof of insanity must preponderate. The legislature took that step. To me it does not place upon the defendant an unfair burden.

In *Boyd v. People,* 108 Colo. 289, 116 P.2d 193, this court held that the plea of not guilty by reason of insanity is in the nature of *confession and avoidance.* How, then, can a defendant claim he has been deprived of due process when he is given first a trial which will completely absolve him from responsibility for his acts if he convinces the jury of his insanity, and will give him a second trial, if he is found sane, where he can again introduce any evidence bearing on his mental condition as it affects or is material to the specific elements of the offense.

There is nothing so unfair in the procedure provided

in the statute this day declared to be invalid as to shock my conscience. To close, I would like to adopt the statement of Mr. Justice Cardozo, in *Snyder v. Massachusetts, supra:*

"The law, as we have seen, is sedulous in maintaining for a defendant charged with crime whatever forms of procedure are of the essence of an opportunity to defend. Privileges so fundamental as to be inherent in every concept of a fair trial that could be acceptable to the thought of reasonable men will be kept inviolate and inviolable, however crushing may be the pressure of incriminating proof. But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true."

I would make the rule absolute.

## ADDENDUM

On petition for rehearing it is suggested that our opinion should indicate whether the Act of 1965, which refers to the same subject, is also unconstitutional. We hold that it, too, cannot be sustained over an objection based upon a denial of due process of law.